967 So.2d 131 (2007)
Chadwick WILLACY, Appellant,
v.
STATE of Florida, Appellee.
Chadwick Willacy, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC05-189, SC05-2021.
Supreme Court of Florida.
June 28, 2007.
Rehearing Denied October 10, 2007.
*134 Brian M. Onek of Balgo, Onek and Mawn, P.A., Melbourne, FL, and Elizabeth Siano Harris of Stadler and Harris, P.A., Titusville, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, and Barbara C. Davis, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Chadwick Willacy appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons *135 stated below, we affirm the circuit court's order denying Willacy's rule 3.850 motion and deny his writ petition.

I. FACTUAL AND PROCEDURAL BACKGROUND[1]
On September 5, 1990, Marlys Sather returned home unexpectedly to find Willacy, her next-door neighbor, burglarizing her house. Willacy bludgeoned Sather and bound her ankles with wire and duct tape. He choked and strangled her with a cord with a force so intense that a portion of her skull was dislodged. Willacy then obtained Sather's ATM pin number, her ATM card, and the keys to her car; drove to her bank; and withdrew money out of her account. Willacy hid Sather's car around the block while he made trips to and from the house. He placed stolen items on Sather's porch for later retrieval, took a significant amount of property from Sather's house to his house, and then drove the car to Lynbrook Plaza where he left it and jogged back to Sather's home. Upon his return, Willacy disabled the smoke detectors, doused Sather with gasoline he had taken from the garage, placed a fan from the guest room at her feet to provide more oxygen for the fire, and struck several matches as he set her on fire.
When Sather failed to return to work after lunch, her employer notified the Sather family of her absence. Sather's son-in-law went to her home and found a shotgun and several electronic items lying on the back porch. Inside the home, he found Sather's body. Medical testimony established that her death was caused by inhalation of smoke from her burning body.
Law enforcement officers conducted an investigation into Sather's murder, uncovering a large amount of evidence linking Willacy to the murder. Willacy's fingerprints were found on the fan at Sather's feet, the gas can, and a tape rewinder at Sather's house. Witnesses reported seeing a man matching Willacy's description near Sather's house and driving Sather's car on the day of the murder. Further, Willacy's girlfriend, Marisa Walcott, telephoned law enforcement officers after discovering a woman's check register in Willacy's wastebasket. Law enforcement officers recognized the check register as belonging to Sather and subsequently arrested Willacy. While executing a search warrant on Willacy's home, law enforcement agents uncovered some of Sather's property, as well as several articles of clothing containing blood consistent with Sather's blood type.
Willacy was charged by indictment with first-degree premeditated murder, burglary, robbery, and arson. Judge Theron Yawn presided over the trial. On October 17, 1991, the jury convicted Willacy on all four counts. Following the penalty phase, the jury recommended death by a vote of nine to three, and Judge Yawn sentenced Willacy to death.[2]
Willacy appealed to this Court but subsequently moved for temporary relinquishment of jurisdiction in order for the trial court to hold an evidentiary hearing on his *136 motion for a new trial. In his motion for a new trial, Willacy claimed that juror Clark, the foreman of Willacy's trial in 1991, was under prosecution for grand theft. Jurisdiction was relinquished and on October 12, 1992, Judge Yawn conducted a hearing on Willacy's motion. Among the witnesses at the hearing, the court heard testimony from Willacy's trial counsel, the prosecutors in his case, and juror Clark. The prosecutors testified that they became aware of Clark's status during Willacy's trial and immediately informed Willacy's trial counsel. Willacy's trial counsel denied receiving this information during trial. Following the hearing, Judge Yawn issued an order denying Willacy's motion for a new trial, finding that the State informed Willacy's trial counsel of Clark's status during trial.
During oral argument on direct appeal, the parties thoroughly debated the issue of juror Clark's eligibility.[3] Willacy's counsel asserted that Clark was under prosecution and, therefore, statutorily ineligible to serve as a juror until he entered into a pretrial intervention (PTI) agreement. According to Willacy's counsel, because Clark did not sign a PTI contract until after Willacy's trial, Clark was disqualified. The State countered that Clark was eligible to serve because he was approved for PTI prior to Willacy's trial. Alternatively, the State argued that because Willacy's trial counsel failed to object to Clark during trial, the matter was waived. This Court affirmed the convictions but vacated the death sentence and remanded the case for a new penalty phase based on Willacy's claim that the trial court did not give defense counsel an opportunity to rehabilitate a juror who said she was opposed to the death penalty. Willacy I, 640 So.2d at 1082. As to the controversy regarding juror Clark, this Court held:
Since Clark was not under prosecution, Willacy's motion for a new trial was properly denied. Moreover, during the trial the State informed Willacy's counsel of Clark's status and his counsel voiced no objection. By failing to make a timely objection, Willacy waived the claim he now seeks to assert. We affirm the trial court's decision.
Willacy I, 640 So.2d at 1083.
At resentencing, Willacy was represented by new counsel and Judge Yawn again presided. The State presented evidence of the crime and testimony of Sather's son and two daughters. Willacy presented the testimony of relatives and friends. The court followed the jury's eleven-to-one recommendation and sentenced Willacy to death, finding five aggravating factors,[4] no statutory mitigating factors, and thirty-one nonstatutory mitigating factors of little weight.[5] On direct appeal after resentencing, *137 Willacy raised eleven issues.[6] This Court denied each of those claims and affirmed Willacy's death sentence. Willacy II, 696 So.2d at 694.
On May 11, 1998, Willacy filed a motion to vacate judgment of conviction and sentence pursuant to Florida Rule of Criminal Procedure 3.850 with special request for leave to amend. On March 18, 2002, Willacy filed an amended motion for postconviction relief in which he raised thirty-one issues. Seventeen of Willacy's claims were summarily denied by order on September 24, 2003.[7] An evidentiary hearing was *138 granted on Willacy's remaining fourteen claims.[8] The evidentiary hearing was held on December 3 through 5 and 19, 2003, and February 16, 2004. On November 23, 2004, the trial court issued an order denying the remaining fourteen claims. Willacy timely filed this appeal.

II. 3.850 MOTION FOR POSTCONVICTION RELIEF
Willacy appeals the denial of his motion for postconviction relief, raising seven issues: (1) the trial court erred in denying an evidentiary hearing on claims 4, 6, and 15 of his motion for postconviction relief; (2) counsel was ineffective for failing to assert the independent act defense; (3) counsel was ineffective for failing to move to recuse the trial judge at the resentencing proceeding; (4) counsel was ineffective for failing to investigate and present evidence of statutory and nonstatutory mitigating factors; (5) counsel was ineffective for failing to inquire regarding juror Clark's status; (6) the trial court erred in failing to retroactively apply this Court's decision in Lowrey v. State, 705 So.2d 1367 (Fla.1998); and (7) the trial court erred in denying Willacy's motion for postconviction DNA testing.

A. Trial Court's Denial of Evidentiary Hearing
Willacy first claims that the trial court erred in denying an evidentiary hearing on claims 4, 6, and 15 of his motion for postconviction relief. "To uphold the trial court's summary denial of claims raised in a 3.850 motion, the claims must be either facially invalid or conclusively refuted by the record." Finney v. State, 831 So.2d 651, 656 (Fla.2002) (quoting Peede v. State, 748 So.2d 253, 257 (Fla.1999)). Because a court's decision as to whether to grant an evidentiary hearing on a rule 3.850 motion filed in a capital case is ultimately based on written materials before the court, its ruling is tantamount to a pure question of law, subject to de novo review. See State v. Coney, 845 So.2d 120, 137 (Fla.2003) (holding that "pure questions of law" that are discernible from the record "are subject to de novo review").
*139 The trial judge denied Willacy an evidentiary hearing on claim 4, in which Willacy asserted that trial counsel, Kurt and Susan Erlenbach, were ineffective for failing to request the appointment of independent counsel at the hearing on his motion for a new trial. The judge did so because he found that "no conflict of interest existed requiring the appointment of an independent counsel at the evidentiary hearing." Order Denying in Part Defendant's Amended Motion for Postconviction Relief, Granting an Evidentiary Hearing on Specified Claims, and Scheduling an Evidentiary Hearing (hereinafter Order Denying Postconviction Relief) at 7 (Sept. 24, 2003). We agree.
Willacy essentially argues that, because the Erlenbachs were necessary witnesses at the post-trial hearing on his motion for new trial, they were required by Rule of Professional Conduct 4-3.7, Rules Regulating the Florida Bar, to seek the appointment of independent counsel. He claims that their failure to do so created a conflict of interest. With some exceptions, rule 4-3.7 provides that "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client." (Emphasis supplied.) However, this rule does not mandate the withdrawal of counsel who must testify in a post-trial hearing such as occurred here. See Columbo v. Puig, 745 So.2d 1106, 1107 (Fla. 3d DCA 1999). The hearing on Willacy's motion for new trial was a very limited, post-trial evidentiary hearing regarding juror Clark's status and whether information about juror Clark was exchanged between opposing counsel. The Erlenbachs' testimony was brief and entirely favorable to the defendant. As the trial court stated:
Kurt Erlenbach testified that no one told him that Juror Clark was pending prosecution. Similarly, Susan Erlenbach testified that she never had a conversation with [the prosecution] regarding this issue. The Erlenbachs' testimony was favorable to the defense and all testimony at the hearing was under oath. The facts would not have changed so how the outcome would have changed with the use of independent counsel at the motion for new trial hearing who may have used a different strategy is inconceivable and pure speculation at best.
Order Denying Postconviction Relief, at 7-8 (Sept. 24, 2003) (record references omitted). We agree with the trial court that, under these circumstances, rule 4-3.7 does not mandate the appointment of independent counsel.
Outside of this purported violation of rule 4-3.7, Willacy fails to allege any conflict of interest which would necessitate withdrawal of defense counsel and appointment of independent counsel. As the United States Supreme Court has held:
[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.
Cuyler v. Sullivan, 446 U.S. 335, 349-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (citation omitted) (citing Holloway v. Arkansas, 435 U.S. 475, 487-91, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); Glasser v. United States, 315 U.S. 60, 72-75, 62 S.Ct. 457, 86 L.Ed. 680 (1942)). Because Willacy's counsel was not required under rule 3-4.7 to seek the appointment of independent counsel and there is no other allegation that the Erlenbachs were actively representing conflicting interests, Willacy has not established the predicate for his claim *140 of ineffective assistance. The trial court's denial of this claim without an evidentiary hearing is affirmed.
Next, the record conclusively refutes Willacy's claim that the trial court improperly denied an evidentiary hearing on claim 6, that counsel was ineffective for failing to object to juror Clark's ineligibility to serve. As we have previously held, counsel is not ineffective for failing to make a futile objection. See Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). Here, the trial court had already conducted an evidentiary hearing with regard to the juror Clark issue when it was deciding Willacy's motion for a new trial. Judge Yawn found that the Erlenbachs were informed of Clark's status at some point during the trial, but failed to object. Therefore, Judge Yawn determined that Willacy waived objection on this matter. On direct appeal, the parties thoroughly explained to this Court the sequence of events leading up to Clark's entry into the pretrial intervention (PTI) program and his service on Willacy's jury. We held on the merits that Clark was eligible to serve. Thus, even if the Erlenbachs had sought to have Clark disqualified, their objection ultimately would have failed. Therefore, because this claim is conclusively refuted by the record, we affirm the trial court's denial of an evidentiary hearing.
Finally, the trial court denied Willacy an evidentiary hearing on claim 15, in which Willacy argued that trial counsel was ineffective for failing to object to the trial court's failure to swear the jury prior to voir dire. Florida criminal procedure does not mandate that a judge swear the jury after the venire has already been sworn by the jury clerk. See Lott v. State, 826 So.2d 457, 458 (Fla. 1st DCA 2002), review denied, 845 So.2d 891 (Fla.2003). Therefore, Willacy's ineffective assistance of counsel claim is legally insufficient. No evidentiary hearing was required.

B. Ineffective Assistance of Trial Counsel[9]
Willacy raises three claims of ineffective assistance of counsel, including the failure to (1) assert the independent act defense; (2) move to recuse the trial judge at the resentencing proceeding; and (3) investigate and present evidence of statutory and nonstatutory mitigating factors. Each claim fails under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
This Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied under Strickland:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Dufour v. State, 905 So.2d 42, 51 (Fla. 2005) (quoting Maxwell, 490 So.2d at 932). Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual *141 findings that are supported by competent, substantial evidence but reviewing the circuit court's legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004). There is a strong presumption that trial counsel's performance was not ineffective. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S.Ct. 2052.
Claims that could have been brought on direct appeal are procedurally barred in postconviction proceedings. Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995). "Postconviction proceedings cannot be used as a second appeal." Swafford v. Dugger, 569 So.2d 1264, 1267 (Fla. 1990); (see also Medina v. State, 573 So.2d 293, 295 (Fla.1990) ("[I]t is inappropriate to use a different argument to relitigate the same issue." (citing Quince v. State, 477 So.2d 535 (Fla.1985)))). "Allegations of ineffective assistance cannot be used to circumvent the rule that postconviction proceedings cannot serve as a second appeal." Medina, 573 So.2d at 295 (citing Blanco v. Wainwright, 507 So.2d 1377 (Fla.1987); Sireci v. State, 469 So.2d 119 (Fla.1985)).
(1) Counsel's Failure to Assert the Independent Act Defense
First, Willacy alleges that trial counsel was ineffective for failing to assert the independent act defense. In his statement to law enforcement officers following his arrest, Willacy admitted his involvement in the robbery, but claimed that two other men, Lonzo Love and Carlton Chance, committed the murder. Before trial, Mr. Erlenbach succeeded in moving the court to suppress Willacy's robbery confession. Erlenbach chose to suppress the confession because Love and Chance had alibis and there was no other evidence linking them to the crime. At the hearing on Willacy's motion for postconviction relief, Erlenbach testified that he pursued a trial strategy of eliminating evidence and creating reasonable doubt. The postconviction trial court denied relief, finding that Erlenbach's evidence-elimination technique was a sound trial strategy under the circumstances of the case and that Willacy failed to show prejudice. The court stated that there was no competent evidence presented by the defense at the evidentiary hearing or in the record that anyone other than Willacy participated in the crimes.
The trial court's conclusion is supported by competent, substantial evidence. See Orme v. State, 677 So.2d 258, 262 (Fla. 1996); Johnson v. State, 660 So.2d 637, 644 (Fla.1995). In Ray v. State, 755 So.2d 604 (Fla.2000), this Court explained:
The "independent act" doctrine arises when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, "which fall outside of, and are foreign to, the common design of the original collaboration." Dell v. State, 661 So.2d 1305, 1306 (Fla. 3d DCA 1995) (quoting Ward v. State, 568 So.2d 452 (Fla. 3d DCA 1990)). Under these limited circumstances, a defendant whose cofelon exceeds the scope of the original plan is exonerated from any punishment imposed as a result of the independent act.
Id. at 609. Erlenbach's choice to forego the independent act defense did not amount to deficient performance. Other than Willacy's statements to law enforcement officers that Love and Chance were involved in the murder, there was no other evidence supporting the independent act defense. Moreover, Willacy's statements *142 to law enforcement officers regarding his involvement in the robbery are essentially a confession to felony murder because Willacy admitted his involvement in the burglary. Consequently, the independent act defense would have been extremely risky compared to the evidence-elimination strategy employed by Erlenbach. Also, given all of the evidence linking Willacy to the murder, there is no reasonable probability that the jury would have acquitted Willacy even if his statements had been introduced into evidence.[10]See Caballero v. State, 851 So.2d 655, 661 (Fla.2003) ("[W]e do not second-guess the trial court's factual findings; instead, we limit our review to ensuring that the trial court applied the correct rule of law and, if so, that there is competent, substantial evidence to support its findings."). We affirm the trial court's conclusion that counsel was not ineffective for failing to assert the independent act defense.
(2) Counsel's Failure to Move for Recusal of the Trial Judge at Resentencing
Next, Willacy claims trial counsel was ineffective for failing to move to recuse the trial judge at the resentencing proceeding. Willacy claims that his resentencing counsel, James Kontos, should have moved to recuse Judge Yawn after the new trial hearing because he refused to follow the procedure outlined in Spencer v. State, 615 So.2d 688 (Fla.1993).[11]
This claim is barred because it should have been raised on direct appeal after resentencing. See Medina, 573 So.2d at 295. Moreover, Willacy cannot overcome this procedural bar by raising the issue in the form of an ineffective assistance of counsel claim. See id. Therefore, we affirm the trial court's denial of this claim.
(3) Counsel's Failure to Investigate and Present Mitigating Evidence
Willacy next claims that trial counsel was ineffective for failing to investigate and present evidence of statutory and nonstatutory mitigating factors. In particular, Willacy claims that counsel failed to present evidence that (1) Willacy was suffering from Attention Deficit Hyperactivity Disorder (ADHD);[12] (2) Willacy was under the influence of extreme mental or emotional disturbance;[13] (3) *143 Willacy was physically abused by his father during childhood and adolescence; and (4) Willacy was in a drug-induced psychosis at the time of the homicide. The postconviction trial court held (1) that Kontos was not ineffective in failing to present testimony of mental illness or ADHD; (2) that Kontos was not ineffective for failing to present evidence of physical abuse by Willacy's father; and (3) that Willacy presented no evidence that he was under the influence of cocaine at the time of the murder.
"Under Strickland, `counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Marshall v. State, 854 So.2d 1235, 1247 (Fla.2003) (quoting Strickland, 466 U.S. at 691, 104 S.Ct. 2052); see also Carroll v. State, 815 So.2d 601, 614-615 (Fla. 2002) (same). This Court has stated:
In evaluating claims that counsel was ineffective for failing to present mitigating evidence, . . . [t]he principal concern . . . is not whether a case was made for mitigation but whether the "investigation supporting counsel's decision not to introduce mitigating evidence . . . was itself reasonable" from counsel's perspective at the time the decision was made.
Holland v. State, 916 So.2d 750, 757 (Fla. 2005) (quoting Wiggins v. Smith, 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)), cert. denied, 547 U.S. 1078, 126 S.Ct. 1790, 164 L.Ed.2d 531 (2006). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (quoting Strickland v. Washington, 466 U.S. 668, 690-91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 521-22, 123 S.Ct. 2527 (quoting Strickland, 466 U.S. at 691, 104 S.Ct. 2052).
At resentencing, Willacy's counsel, James Kontos, sought to portray Willacy as a life worth saving and, therefore, avoided presenting evidence that Willacy was a sociopath. Kontos called a number of witnesses who testified to Willacy's good deeds. The postconviction trial court found that this was sound strategy, noting that humanizing a defendant is an accepted strategy that falls within the broad range of reasonably competent performance under prevailing professional standards. See Haliburton v. Singletary, 691 So.2d 466, 471 (Fla.1997); Bryan v. Dugger, 641 So.2d 61, 64 (Fla.1994). The postconviction trial court also stated that any mental mitigation evidence would have opened the door to aggravating facts, such as testimony about Willacy's threat to kill a teacher, setting a school bulletin board on fire, setting squirrels on fire, and running squirrels over with a lawnmower, and descriptions by a school principal of Willacy as incorrigible and needing counseling. The court further stated that the facts of the case show a deliberate, methodical process, not the activities of someone under the influence of an extreme emotional disturbance or cocaine intoxication, who is unable to conform his conduct to the requirements of the law. Also, the court noted that there was overwhelming evidence of Willacy's guilt of first-degree premeditated murder, and there was substantial, compelling aggravation found by the jury and the trial court. In addition, the *144 postconviction trial court pointed out that, throughout the penalty phase in 1991 and the resentencing in 1995, Willacy and his family members, while under oath, repeatedly denied that Willacy was physical abused as a child.
The postconviction trial court's findings are supported by competent, substantial evidence. Kontos conducted a reasonable investigation into Willacy's mental condition and family history and made a reasonable strategic choice to forego presentation of negative mitigation evidence. First, Kontos consulted with psychologist Dr. William Riebsame prior to trial. Dr. Riebsame told Kontos that, based on preliminary testing, Willacy might be a sociopath or psychopath. As a result, Kontos decided not to employ Dr. Riebsame or allow him to proceed further to see if that diagnosis was accurate. Kontos believed that the jury would not be receptive to a depiction of Willacy as antisocial, sociopathic, or psychopathic. Dr. Riebsame testified at resentencing that Willacy met the diagnosis for ADHD, Antisocial Personality Disorder, and probably cocaine intoxication and cocaine withdrawal. However, Dr. Riebsame stated that Willacy's ability to appreciate the criminality of his conduct was not impaired, and that Willacy's ability to conform his conduct to the law was impaired but not substantially. Further, because Willacy and his family concealed his childhood abuse, Kontos was unable to discover it. Thus, the postconviction trial court properly concluded that Kontos's performance was not deficient based on a failure to further investigate Willacy's family and mental health background.
Also, Willacy has not shown prejudice because presenting this mitigating evidence "would likely have been more harmful than helpful." Evans v. State, 946 So.2d 1, 13 (Fla.2006); Burger v. Kemp, 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (concluding counsel's limited investigation was reasonable because he interviewed all witnesses brought to his attention, discovering little that was helpful and much that was harmful); Darden v. Wainwright, 477 U.S. 168, 186, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (concluding that counsel engaged in extensive preparation and that the decision to present a mitigation case would have resulted in the jury hearing evidence that petitioner had been convicted of violent crimes and spent much of his life in jail); see Griffin v. State, 866 So.2d 1, 9 (Fla.2003) ("Trial counsel is not deficient where he makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony."). In Reed v. State, 875 So.2d 415 (Fla.2004), we stated:
[E]ven if [defense] counsel had . . . investigated further, the testimony that could have been presented was just as likely to have resulted in aggravation against rather than mitigation for [the defendant].
An ineffective assistance claim does not arise from the failure to present mitigation evidence where that evidence presents a double-edged sword.
Id. at 436-37. "Furthermore, this Court has acknowledged in the past that antisocial personality disorder is `a trait most jurors tend to look disfavorably upon.'" Id. at 437 (quoting Freeman v. State, 852 So.2d 216, 224 (Fla.2003)). Thus, there is no reasonable probability that the outcome of the proceeding would have been different if Kontos had chosen to focus on Willacy's abuse and mental health issues rather than on the positive aspects of Willacy's life. Accordingly, counsel was not ineffective for failing to present this evidence.

*145 C. Postconviction DNA Testing
Willacy seeks DNA testing on several items pursuant to Florida Rule of Criminal Procedure 3.853, claiming that he will be exonerated, including DNA testing of blood on a napkin and a pair of men's multicolored shorts found in his house, and DNA testing of a green tank top and man's white shirt found at the victim's house. Willacy claims that he will be exonerated because testing will show that the blood on the napkin and the multicolored shorts came from Willacy's girlfriend and not the victim. Willacy also alleges that the green tank top and white shirt had been worn by the murderer, and that DNA testing would determine the identity of the wearer, thereby excluding Willacy as the perpetrator.
The applicable law is set forth in section 925.11(2), Florida Statutes (2006), and Florida Rule of Criminal Procedure 3.853, as well as Hitchcock v. State, 866 So.2d 23, 27 (Fla.2004). Section 925.11(2) states:
(a) The petition for postsentencing DNA testing must be made under oath by the sentenced defendant and must include the following:
. . . .
3. A statement that the sentenced defendant is innocent and how the DNA testing requested by the petition will exonerate the defendant of the crime for which the defendant was sentenced or will mitigate the sentence received by the defendant for that crime. . . .
See also Fla. R.Crim. P. 3.853. Further, in Hitchcock, 866 So.2d at 27, this Court stated:
The clear requirement of these provisions is that a movant, in pleading the requirements of rule 3.853, must lay out with specificity how the DNA testing of each item requested to be tested would give rise to a reasonable probability of acquittal or a lesser sentence. In order for the trial court to make the required findings, the movant must demonstrate the nexus between the potential results of DNA testing on each piece of evidence and the issues in the case.
The postconviction trial court denied Willacy's 3.853 motion, concluding that Willacy failed to explain with reference to the specific facts about the crime how DNA testing of these items would exonerate him or mitigate his death sentence. We agree with the postconviction trial court. At trial, the State presented a plethora of other evidence upon which the jury could have based its decision in convicting Willacy of Sather's murder. Willacy's fingerprints were found on the gas can and a fan at the murder scene, and Willacy matched the description of the suspect seen in the neighborhood on the day of the murder. Also, Willacy's picture was taken by an ATM machine when he used the victim's credit card, and he matched the description of the man seen driving the victim's car the day of the murder. Thus, because DNA testing would not eliminate significant and substantial evidence directly linking Willacy to Sather's murder, it would not give rise to a reasonable probability of acquittal or a lesser sentence. Therefore, we affirm the postconviction trial court's denial of Willacy's claim for postconviction DNA testing.

III. PETITION FOR WRIT OF HABEAS CORPUS
In his petition for writ of habeas corpus, Willacy raises seven issues: (1) appellate counsel was ineffective for failing to raise on direct appeal lack of probable cause to arrest Willacy or to search Willacy's residence; (2) Willacy was denied his constitutional right to a fair trial by having a juror who was pending prosecution serve as the foreman on his jury; (3) appellate counsel *146 was ineffective for failing to raise on direct appeal the fundamental error resulting from the trial court's failure to swear prospective jurors; (4) appellate counsel was ineffective for failing to argue that the jury was improperly instructed as to the aggravating circumstance of cold, calculated, and premeditated (CCP); (5) Willacy was sentenced to death in violation of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (6) death by lethal injection violates article I, section 17 of the Florida Constitution and the Eighth Amendment of the United States Constitution; and (7) Willacy's Eighth Amendment right against cruel and unusual punishment may be violated as he may be incompetent at the time of execution. Issues (2), (5), (6), and (7) are either without merit or not yet ripe for review and need not be discussed in detail.[14]

A. Counsel's Failure to Raise Lack of Probable Cause
(1) Lack of Probable Cause to Arrest Willacy
Willacy claims that appellate counsel was ineffective during his direct appeal for failing to raise lack of probable cause to arrest Willacy. The original trial court found that there was probable cause to arrest Willacy, and this finding is supported by the record. Detective George Santiago testified that he went to the victim's home on September 6, 1990. He saw household items on the back porch and noticed a strong odor of gasoline in the house. Willacy lived next door to Sather. Detective Santiago initially questioned Willacy to determine whether Willacy's house had also been burglarized. However, after walking through his house, Willacy advised that nothing was missing. When Detective Santiago asked for fingerprints to eliminate Willacy, Willacy refused to give them. Although Willacy agreed to go to the police station around 5 p.m., he never appeared. A sixteen-year-old boy reported seeing someone matching Willacy's description driving Sather's car around the time of the murder. A neighbor also reported seeing a muscular black male exit the wooded area next to Sather's home and get into a two-toned, four-door car. Willacy matched these descriptions. Further, Roland Sasscer reported attempting to visit Sather on the day of the murder to discuss purchasing her car, but no one answered the door. The next day, Detective Santiago interviewed Willacy at Willacy's house. During the interview, Willacy stated that he was working on his roof the day of the murder but never saw Sasscer. Later that evening, Detective Santiago received a telephone call from Willacy's girlfriend, Marisa Walcott, informing him that she discovered a woman's check ledger in the wastebasket of Willacy's bathroom. Walcott stated that Willacy was asking her to give him the ledger, but she would not let him have it. Detective Santiago returned to Willacy's house, and Willacy pointed out the checkbook ledger in the wastebasket. Detective Santiago recognized the handwriting as Sather's from his earlier investigation. At that point, Detective Santiago arrested Willacy and secured *147 his house. Before trial, defense counsel moved to suppress statements made by Willacy after he was arrested on the ground that law enforcement officers lacked probable cause to arrest Willacy. The trial court granted the motion to suppress based on a Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), violation but held that officers had probable cause to arrest Willacy. Appellate counsel did not raise the issue on direct appeal.
The record reflects that reasonable grounds existed at the time Willacy was arrested to believe that he had committed the murder. A law enforcement officer has probable cause to arrest if he has reasonable grounds to believe that the person arrested has committed a felony. Shriner v. State, 386 So.2d 525, 528 (Fla.1980). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). The trial court's probable cause determination is correct. "If a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000) (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). Appellate counsel cannot be deemed ineffective for failure to raise a meritless issue. Id. Because this claim lacked merit, appellate counsel was not ineffective for failing to raise it on direct appeal.
(2) Lack of Probable Cause to Search Willacy's Home
Similarly, appellate counsel was not ineffective for failing to raise lack of probable cause to search Willacy's home because the trial court's finding that probable cause existed to sustain the search warrant is supported by the record. A trial court's duty upon reviewing the magistrate's decision to issue the search warrant is not to conduct a de novo determination of probable cause but to determine whether substantial evidence supported the magistrate's finding that, based on the totality of the circumstances, probable cause existed to issue the warrant. State v. Van Pieterson, 550 So.2d 1162, 1164 (Fla. 1st DCA 1989). A magistrate's determination should be accorded a presumption of correctness and not disturbed absent a clear demonstration that the issuing magistrate abused his discretion. State v. Price, 564 So.2d 1239, 1241 (Fla. 5th DCA 1990). The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Id.
Here, the record supports the trial court's finding that the search warrant was supported by probable cause. The evidence existing at the time the search warrant was issued, especially the finding of Sather's check register in Willacy's home and the finding of Willacy's fingerprints in Sather's home, created a fair probability that evidence of the murder would be found in Willacy's home. See Price, 564 So.2d at 1241. Thus, there is no indication that the magistrate committed an abuse of discretion or that the officers acted in bad faith in relying on the search warrant. Because the claim of lack of probable *148 cause to search Willacy's house was without merit, appellate counsel was not ineffective for failing to raise it. See Rutherford, 774 So.2d at 643.

B. Counsel's Failure to Argue Improper Instruction on Cold, Calculated, and Premeditated (CCP)
Finally, Willacy claims that appellate counsel was ineffective for failing to argue that the jury was improperly instructed as to the aggravating circumstance of cold, calculated, and premeditated (CCP). Because the record does not indicate that counsel specifically requested a jury instruction distinguishing between "ordinary premeditation" and the premeditation required for the CCP aggravator "cold, calculated and premeditated," the issue was not preserved for appeal. Therefore, appellate counsel was not ineffective for failing to raise this claim. See Rutherford, 774 So.2d at 643.

V. CONCLUSION
For the reasons expressed above, we affirm the trial court's denial of Willacy's motion for postconviction relief and deny Willacy's petition for writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] See Willacy v. State, 640 So.2d 1079 (Fla. 1994) (hereinafter Willacy I) and Willacy v. State, 696 So.2d 693 (Fla.1997) (hereinafter Willacy II).
[2] Judge Yawn found four aggravating factors: the murder was committed (1) while engaged in the commission of arson; (2) for pecuniary gain; (3) in an especially heinous, atrocious, or cruel manner; and (4) to avoid arrest. The sole statutory mitigating factor was Willacy's lack of prior criminal activity, and the two nonstatutory mitigating factors were Willacy's history of nonviolence and his attempts at self-improvement while in jail.
[3] The eight issues raised on direct appeal were: (1) the court committed reversible error when it refused the defense an opportunity to rehabilitate a prospective juror; (2) a prospective juror was improperly challenged based on his race; (3) the jury foreman was ineligible to serve; (4) the court improperly found that Willacy's statements were voluntarily made; (5) the killing was not committed to avoid arrest; (6) the killing was not heinous, atrocious, or cruel; (7) the court improperly weighed the mitigating and aggravating factors; and (8) death is an inappropriate penalty. Willacy I, 640 So.2d at 1081 n. 2.
[4] The five aggravating factors were: (1) the murder was committed in the course of a felony; (2) the murder was committed to avoid lawful arrest; (3) the murder was committed for pecuniary gain; (4) the murder was especially heinous, atrocious, or cruel (HAC); and (5) the murder was committed in a cold, calculated, and premeditated manner (CCP).
[5] The nonstatutory mitigating factors were that Willacy (1)-(3) exhibited kindness, compassion, and concern for others; (4) enjoyed the love and affection of his family; (5)-(6) enjoyed the respect and admiration of his peers and his family; (7) demonstrated a desire and a willingness to help others; (8)-(9) was a leader and a role model to his peers; (10) maintained strong ties to his family; (11) exhibited appropriate demeanor and behavior during the resentencing hearing; (12) exhibited love for his family; (13)-(14) was a good and loyal friend and a good and obedient son; (15) was unselfish; (16) contributed to the lives of others; (17) showed the proper respect for his elders; (18)-(19) demonstrated honesty and responsibility; (20) was a hard worker; and (21) voluntarily sought help for his drug problem. While in school, Willacy (22) enjoyed the respect and confidence of his teachers and coaches; (23) did not experience any academic or disciplinary problems; (24) was a disciplined and dedicated member of his high school track team; (25) demonstrated a willingness to help his teammates and otherwise be a team player; (26) was the captain of his high school track team and enjoyed numerous honors in connection with his talents as a runner; (27) had no history of previous violent conduct; and (28) had a good upbringing without serious disciplinary problems. Judge Yawn also considered (29)-(30) any other aspect of Willacy's character or background; and (31) any other factor deemed appropriate.
[6] The eleven issues Willacy raised on direct appeal after resentencing were: (1) the denial of Willacy's motion for recusal of the judge; (2) the admission of inflammatory evidence; (3) the finding that the murder was heinous, atrocious, or cruel (HAC); (4) the finding that the murder was committed to evade arrest; (5) the finding that the murder was committed for pecuniary gain; (6) the finding that the murder was committed in a cold, calculated, and premeditated manner (CCP); (7) the proportionality of the death sentence; (8) the admission of victim impact evidence; (9) the refusal to strike jurors for cause; (10) cumulative error; and (11) the constitutionality of the death penalty statute.
[7] Willacy's claims that were summarily denied included: (3) Willacy was denied a fair trial due to the State's failure to inform the court of juror Clark's statutory ineligibility; (4) counsel was ineffective for waiving the appointment of independent counsel to litigate the facts and circumstances regarding juror Clark's pending felony charges; (5) counsel was ineffective for failing to fully present to the trial court during the hearing on October 12, 1992, all aspects of the pretrial intervention program and juror Clark's status as pending prosecution at the time of his jury service; (6) counsel was ineffective for failing to object to juror Clark's ineligibility to serve as a juror; (8) the trial court applied an incorrect standard of review or law in denying Willacy's motion for a new trial; (9) Willacy was denied a fair trial due to juror misconduct; (11) counsel was ineffective for failing to timely move to disqualify Judge Yawn from presiding over the second penalty phase proceeding; (12) the trial court erred by failing to follow the procedure outlined in Spencer v. State, 615 So.2d 688 (Fla. 1993), in resentencing Willacy in 1995; (14) jurors were not sworn prior to voir dire in the original trial as required by Florida Rule of Criminal Procedure 3.300(a); (15) counsel was ineffective for failure to object to the trial court's failure to swear the jury prior to voir dire in the original trial; (16) the trial court erred in concluding that there was probable cause for Willacy's arrest and search of his home; (20) the trial court erred in failing to properly instruct the jury during the 1995 penalty phase proceeding on the distinction between regular premeditation and the higher standard of cold, calculated, and premeditated murder; (26) the indictment violated the Sixth Amendment and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because it failed to include aggravating circumstances; (27) Florida's death penalty statute is unconstitutional under the Sixth Amendment and Apprendi because the jury was not instructed that they must unanimously find beyond a reasonable doubt any aggravating circumstance; (28) the trial court's failure to instruct the jury that they must unanimously find that the aggravating circumstances outweigh the mitigating circumstances in order to recommend a death sentence violated the Sixth Amendment and Apprendi; (29) the trial court's failure to require a unanimous binding jury verdict as to the death penalty was unconstitutional under Apprendi; (30) lethal injection and Florida's procedures implementing lethal injection constitute cruel or unusual punishment in violation of the Eighth Amendment and article I, section 17 of the Florida Constitution.
[8] These claims all pertained to the ineffectiveness of trial counsel: (1) failure to raise an independent act defense; (2) failure to investigate potentially exculpatory evidence; (7) failure to inquire of juror Clark during voir dire regarding his eligibility to serve; (10) failure to prepare fully and adequately for trial by retaining a fingerprint or crime scene expert; (13) failure to seek to disqualify the trial judge based on the trial court's use of a sentencing order which had been prepared prior to the Spencer hearing; (17) failure to object to evidence introduced at trial; (18) failure to request a jury instruction on felony murder and the law of principals; (19) failure to request an Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), jury instruction; (21) failure to present evidence of a statutory mitigating circumstance pursuant to section 921.141(6)(f), Florida Statutes (Supp. 1990); (22) failure to present statutory mitigating circumstances pursuant to section 921.141(6)(b), Florida Statutes (Supp.1990); (23) failure to present statutory mitigating circumstances pursuant to section 921.141(6)(h), Florida Statutes (Supp.1990); (24) failure to present mental health testimony to rebut the State's claim that the murder was committed in a cold, calculated, and premeditated manner; (25) waiver of the presentencing investigation report; and (31) cumulative error.
[9] In addition to the ineffectiveness claims discussed below, Willacy argues that trial counsel was ineffective for failing to inquire into juror Clark's status during voir dire and that this Court's holding in Lowrey v. State, 705 So.2d 1367 (Fla.1998), should be applied retroactively to this case. As stated above, because this Court determined on direct appeal that Clark was not under prosecution during Willacy's trial, these claims have no merit, are procedurally barred, and require no further discussion.
[10] Law enforcement agents uncovered a large amount of evidence linking Willacy to the murder: (1) Willacy was Sather's next-door neighbor and she knew him; (2) Willacy's fingerprints were found on a fan motor placed at the victim's feet to fan the flames; (3) Willacy's fingerprint was also found on a gas can left in the kitchen that was apparently used to pour gas on the victim before using matches to set her on fire; (4) another one of Willacy's fingerprints was found on a tape rewinder found on the back porch where Willacy left stolen items to be retrieved later; (5) law enforcement agents found blood consistent with the victim's on a paper towel, a tennis shoe, and a pair of shorts taken as a result of the search of Willacy's home; (6) some of Sather's property was found hidden in Willacy's home in a gym bag underneath his bed; (7) law enforcement agents found Sather's check registry, jewelry, and coins in Willacy's house; (8) Willacy was seen alone driving Sather's car; (9) Willacy was seen alone in photographs taken at an ATM while he used Sather's ATM card.
[11] Specifically, Judge Yawn entered a previously prepared sentencing order immediately following the hearing rather than taking a recess after the defense evidence was complete. The postconviction trial court stated that Willacy showed no prejudice under the Strickland standard. The trial court reasoned that even if Kontos had moved to recuse Judge Yawn, the motion would have been denied because there were no grounds requiring recusal. Therefore, the postconviction trial court ruled that Kontos was not ineffective for failing to make a futile request.
[12] See § 921.141(6)(f), Fla. Stat. (2004).
[13] See § 921.141(6)(b), Fla. Stat. (2004).
[14] Because this Court determined on direct appeal that juror Clark was eligible to serve on Willacy's jury, issue (2) is without merit. Issue (3) is essentially the same as claim 15 of Willacy's motion for postconviction relief and was already disposed of above. Willacy's Ring claim fails because Ring does not apply retroactively. See Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); Johnson v. State, 904 So.2d 400 (Fla. 2005). Also without merit is Willacy's claim challenging Florida's procedure of execution by lethal injection. See Sims v. State, 754 So.2d 657, 668 (Fla.2000). Finally, Willacy's claim that he may be incompetent at the time of execution is not yet ripe for review. See Robinson v. State, 913 So.2d 514, 524 n. 9 (Fla.2005).