991 So.2d 883 (2008)
Jonathan Calvin PILIECI, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-4255.
District Court of Appeal of Florida, Second District.
April 9, 2008.
*886 Joe Caimano, Tampa, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Susan M. Shanahan, Assistant Attorney General, Tampa; and Sara Macks, Assistant Attorney General, Tampa (substituted as counsel of record), for Appellee.
ALTENBERND, Judge.
Jonathan Calvin Pilieci appeals his judgments and sentences for several drug-related offenses. He pleaded nolo contendere to these charges after the trial court denied his dispositive motion to suppress evidence obtained as a result of a search of his apartment pursuant to a search warrant. We conclude that the trial court erred in ruling that the magistrate had probable cause to issue the warrant.[1]
The more difficult question is whether the evidence is nevertheless admissible under the good faith exception created in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). That exception is evaluated under an objective standard that can be determined by an appellate court. We are inclined to believe that the Leon standard does not save this evidence from exclusion. However, because the trial court also erred in evaluating whether material omissions were made when applying for this warrant, we are not convinced that the record allows us to make the Leon decision in this case. Accordingly, we reverse the order on appeal and remand for further proceedings in which the trial court can determine whether the evidence is admissible despite the violation of Mr. Pilieci's constitutional rights.

I. THE AFFIDAVIT FOR SEARCH WARRANT
On March 14, 2006, a detective from the Hillsborough County Sheriff's Office obtained a search warrant from Hillsborough County Circuit Court Judge Martha Cook. The warrant was issued exclusively upon the detective's affidavit. Excluding only the information about the detective and his experience, the affidavit stated:
On February 13, 2006 at approximately 9:00 p.m. the Hillsborough County Sheriff's Office arranged for an under-cover purchase of cocaine from said residence described in Exhibit "A." Your affiant contacted John via Hillsborough County Sheriff's Office confidential informant # NA-0613. Your affiant was invited to come by the residence by John. Your affiant arrived at the residence and observed that door was opened from the inside. Your affiant then knocked on the front door where he met with John who invited your affiant *887 to enter the residence. Once inside your affiant met with a white male who identified himself as John. Your affiant asked John for a quantity of cocaine. John handed your affiant a plastic bag containing a white, rock-like substance which appeared to be cocaine. John then asked your affiant to place the suspected cocaine on the scale. Your affiant then handed John a sum of United States Currency in exchange for the suspected cocaine.
Your affiant exited the residence and relocated to a secure location and conducted a field reagent test of the cocaine and it tested positive for cocaine content.
Your affiant conducted a records check through Tampa Electric Company and learned that the residence as described in Exhibit "A" receives service in the name of:
[A specifically identified person who is not named "John"] and has been so listed since October, 2005.
Based on the information listed [in] this search warrant, your affiant believes and has reason to believe that the residence as described in Exhibit "A" is being used as a distribution point and supply house for Cocaine....
Exhibit A described the residence as an apartment unit.
In essence, the affidavit sought a search warrant for the apartment based on a single sale of an undescribed quantity of cocaine from an unidentified person located at the apartment on one occasion at 9 p.m. on February 13, twenty-nine days prior to the issuance of the warrant. The affidavit provided no evidence that connected Mr. Pilieci to the apartment or the drugs, other than the fact his name is "Jonathan" and the person in the apartment identified himself as "John."
A search of the apartment described in exhibit A was performed the same day the warrant was signed, March 14. In addition to two Ziploc bags of cocaine and some cocaine residue, the officers found a Ziploc bag of marijuana, two plastic bags of methylenedioxy-methamphetamine (MDMA, commonly known as ecstasy), one pill bottle with alprazolam, drug paraphernalia, and a firearm that Mr. Pilieci was not authorized to possess because he was a convicted felon. Notably, no scale was seized as a result of the search. As a result of this search, Mr. Pilieci was charged with trafficking in cocaine (28 to 200 grams), a first-degree felony;[2] trafficking in phenethylamines (10 to 200 grams), a first-degree felony;[3] possession of a controlled substance, a third-degree felony;[4] possession of cannabis (less than 20 grams), a first-degree misdemeanor;[5] and possession of drug paraphernalia, a first-degree misdemeanor.[6]

II. THE MOTION TO SUPPRESS AND THE ADDITIONAL INFORMATION REVEALED AT THE HEARING ON THE MOTION
Mr. Pilieci filed a motion to suppress the evidence seized as a result of the search warrant, arguing in part that the affidavit was insufficient to establish the probable cause necessary to support the search. At a hearing on the motion, the detective who sought the search warrant revealed additional information known to him when he sought the warrant but not included in the affidavit.
*888 The detective explained that based on a tip from an informant he had begun an investigation of the possibility that Mr. Pilieci was selling illegal drugs in early 2006. The detective arranged for a confidential informant to make a "small purchase" from Mr. Pilieci at the pizza parlor where he worked. The details of that purchase are not contained in the record, but it apparently occurred sometime in mid January 2006. Significantly, the affidavit omitted all reference to this first small purchase at another location.
Thereafter, on February 13, 2006, the detective arranged a second controlled purchase of 3.6 grams of cocaine from Mr. Pilieci. This is the purchase that took place at 9 p.m. at the apartment. The confidential informant apparently arranged the purchase by telephone, but the conversation was not monitored by the detective and there is no indication that the telephone call was made to the apartment where the transaction ultimately took place.
The officer went to the apartment with the confidential informant to purchase these drugs. He explained that Mr. Pilieci, whom he apparently knew as "John," was in the apartment with a "female." According to the officer, Mr. Pilieci "pulled a small baggie of white powdery substance. We did an exchange. I asked him if it was good, he said yes. He pulled the scale. I placed it on the scale. CI asked how much money it was. I paid him for it. We said bye and I left."[7]
The detective never explained the location from which Mr. Pilieci "pulled" the small bag, but in context it appears likely that the bag was on Mr. Pilieci's person and not hidden someplace in the apartment. In his testimony, the detective made clear that the scale described in the affidavit was possessed by Mr. Pilieci and was not brought to the sale by the detective. Again, the detective stated that Mr. Pilieci "pulled" the scale. Accordingly, it may have been a small scale that he carried on his person. The detective admitted that he did not see any other cocaine or contraband in the apartment. From the detective's affidavit, we know that he did not know Mr. Pilieci's identity at the time of this transaction. Indeed, from the record it is unclear when the detective discovered Mr. Pilieci's identity, but it had to have been discovered at some point after the warrant was issued.
The detective did not perform any surveillance on this apartment between February 13 and March 14. He did not obtain information, other than the electric bill, to establish who rented this apartment. The detective did not investigate whether "John" lived at the apartment or whether "John" was merely visiting the female in the apartment or the individual identified in the affidavit as the person responsible for the electric bill. In this respect, the affidavit is, at least, confusing because it describes the apartment as a "residence" without pointing out that the detective had no evidence that it was "John's" residence. The record is devoid of any evidence connecting Mr. Pilieci to the man who paid the electric bill. The detective never observed any other criminal activity at the apartment and had no further conversations with Mr. Pilieci.
Significantly, the officer testified that he and the confidential informant made a "couple" attempts to set up additional transactions but failed to make contact with Mr. Pilieci: "We couldn't get in touch *889 with him." The detective admitted on cross-examination that he was aware that evidence could be regarded as stale after thirty days, and that part of the reason he applied for a warrant was because the "thirty days was coming up."

III. THE TRIAL COURT'S RULING
When Mr. Pilieci filed his motion to suppress, he had the burden of proof because the evidence had been seized pursuant to a warrant. See State v. Lyons, 293 So.2d 391, 393 (Fla. 2d DCA 1974). He argued that the warrant was issued without probable cause and as a result of material omissions within the affidavit. Because the affidavit was issued on the twenty-ninth day and case law tends to use the thirtieth day as an indicator of staleness, see Rodriguez v. State, 297 So.2d 15, 18 (Fla.1974); Haworth v. State, 637 So.2d 267, 267 (Fla. 2d DCA 1994); Hamelmann v. State, 113 So.2d 394, 396 (Fla. 1st DCA 1959), much of the trial court's focus was on the issue of staleness. The trial court determined that the affidavit established probable cause and that no material omission affected the issuance of the warrant. As a result of this ruling, the trial court never reached the issue of whether the good faith exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), might render the evidence admissible despite any illegality in its seizure. Neither party thus had an opportunity to present any additional evidence or argument on that issue before the trial court.
When the trial court denied the motion to suppress, Mr. Pilieci pleaded nolo contendere to these charges, receiving concurrent sentences of sixty months' incarceration on each felony and time served on each misdemeanor. The trial court acknowledged that the motion to suppress was a dispositive motion, and Mr. Pilieci appealed to this court.

IV. THE STANDARD OF REVIEW
Appellate review of an order denying suppression of evidence seized under authority of a search warrant involves a moderately complex set of rules. First, it is necessary to consider the test used by the magistrate when he or she decides whether to issue the warrant. Second, we consider the test used by the trial court when it decides whether to suppress the evidence. Third, we must apply the appropriate appellate standard of review to assess the trial court's decision.

A. The Magistrate's Determination of Probable Cause.
The magistrate is the person entrusted with the authority to decide whether law enforcement has information that rises to the level of probable cause necessary to justify entry into a building to search for evidence of a crime and to seize that evidence. In order to assure compliance with the rule of law and to permit review of that decision by another court, the magistrate must consider solely the facts stated in the affidavit. See State v. Bond, 341 So.2d 218, 219 (Fla. 2d DCA 1976); see also § 933.18, Fla. Stat. (2005); Pagan v. State, 830 So.2d 792, 806 (Fla. 2002).
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
*890 Thus, the test for the magistrate when signing a search warrant is whether the information in the application for the warrant demonstrates a "fair probability" that the building contains contraband at the time the warrant is issued. The conduct of the suspects and other people connected to the building is relevant to determine whether to issue a search warrant, but not in the same way that such evidence supports an arrest warrant.
Obviously, a test based on "all of the circumstances" and a "fair probability" is not designed to result in many bright-line rules. In this case, however, there was much discussion in the trial court of a "thirty-day rule" for determining staleness of evidence.
In State v. Lewis, 605 So.2d 590 (Fla. 2d DCA 1992), this court stated:
The courts of this state have generally refused to invalidate warrants because of "staleness," in the absence of extraordinary circumstances, if the issuance of the warrant occurs within thirty days of the observation of the evidence establishing probable cause. See Montgomery v. State, 584 So.2d 65 (Fla. 1st DCA 1991); Sotolongo v. State, 530 So.2d 514 (Fla. 2d DCA 1988); Hamelmann v. State, 113 So.2d 394 (Fla. 1st DCA 1959).
605 So.2d at 591. Based upon this analysis, this court concluded that the evidence of a controlled purchase of cocaine at a residence thirteen days before the issuance of the warrant was not stale and supported the magistrate's determination of probable cause. Notably, the facts of Lewis were virtually indistinguishable from the facts in Sotolongo, which thus provided controlling precedent for the result in Lewis.
To the extent that lawyers, judges, and police officers believe that a bright-line test has been created regarding the staleness of information in an affidavit seeking a search warrant, they tend to rely on the following language from Hamelmann:
Barring extraordinary circumstances which may be shown to exist in any given case, the pattern has been rather clearly established in courts of this country that if the observation of the alleged offense is not farther remote than 30 days from the making of the affidavit and issuance of the warrant, a finding that there exists probable cause will not be disturbed. The contrary appears where the elapsed time is more than 30 days from the date of the observation to the date on which the affidavit is executed and the warrant issued.
113 So.2d at 396. The clearly established pattern upon which the Hamelmann court relied was apparently deduced from an annotation, Requisites and Sufficiency of Affidavit upon which Search Warrant Is Issued as regards the Time when Information as to Offense Was Received by Officer or his Informant, 162 A.L.R. 1406, 1414 (1946). Hamelmann, 113 So.2d at 396 n. 3.
In 1974, however, the Florida Supreme Court acknowledged the above-quoted language in Hamelmann but referred to the thirty-day discussion as a "rule of thumb." See Rodriguez v. State, 297 So.2d 15, 18 (Fla.1974). Notably, the supreme court also considered an annotation, the one that had since superseded the annotation cited in Hamelmann. Rodriguez, 297 So.2d at 18 (citing S. Bernstein, Search Warrant: Sufficiency of Showing as to Time of Occurrence of Facts Relied On, 100 A.L.R.2d 525 (1965)). The supreme court cited the annotation as noting that intervals of less than four days between the occurrence of the facts relied on and issuance of the warrant had never been held unreasonable but intervals longer than forty-nine days *891 had always been held unreasonable. Id. The supreme court cautioned:
While we do not quarrel with the accuracy of this statement, we would note that the issue of "staleness" cannot be solved by a simple application of numbers of days without consideration of the overall particular circumstances presented by the case.
Rodriguez, 297 So.2d at 18. The court again emphasized, "We reiterate that the 30-day period is not a hard-and-fast line, but only a `rule of thumb' ...." Id.; see also Montgomery v. State, 584 So.2d 65, 66 (Fla. 1st DCA 1991) (discussing Rodriguez's clarification of the "30-day rule" in Hamelmann); Hudson v. State, 368 So.2d 899, 901-02 (Fla. 3d DCA 1979) (same).
As a result, our decision in Lewis similarly cannot be interpreted to create any bright-line test. Indeed, we still adhere to the reasoning of then Judge Grimes in Smith v. State, 438 So.2d 896 (Fla. 2d DCA 1983):
The length of time between the events relied upon to obtain a search warrant and the date of issuance bears upon probable cause. Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932). Generally, as the time period increases there is less likelihood that the items sought to be seized will be found on the premises described in the warrant. See 100 A.L.R.2d 525 (1965). The rule of thumb is thirty days, but each case must be decided upon its own particular circumstances. Rodriguez v. State, 297 So.2d 15 (Fla.1974); Hamelmann v. State, 113 So.2d 394 (Fla. 1st DCA 1959).
Id. at 897-98. See also State v. Brainard, 376 So.2d 864, 869 (Fla. 2d DCA 1979). Notably, a 2003 annotation, When Are Facts Offered in Support of Search Warrant for Evidence of Sale or Possession of Cocaine So Untimely as to Be Stale State Cases, 109 A.L.R.5th 99 (2003), reviews cases involving intervals from one week to six months and finds conflicting results within those intervals.
The "fair probability" standard announced in Gates is a flexible test, and as such any assessment of when information becomes too stale to meet that test must also remain flexible. The thirty-day period identified in Hamelmann and discussed in Rodriguez and its progeny is at most a "rule of thumb." In this regard, the First District sought in Montgomery to identify certain factors to consider in determining whether the information in an affidavit is sufficiently "fresh" to support probable cause, including: whether there was evidence of a pattern of ongoing criminal activity; the nature of the object sought; the nature of the criminal activity involved; whether there was a continuing flow of information or an ongoing investigation; and the size or supply of the contraband as it relates to the suspect's ability to dispose of it quickly. 584 So.2d at 67. Indeed, the Florida Supreme Court in Rodriguez had also noted,
the nature of the illegal activity has some bearing on the question of timeliness of the affidavit. For example, an affidavit dealing with the offense of possession of marijuana in quantity less than five grams will become "stale" quickly (in view of the possibility that the alleged offender will either dispose of this quantity quickly or consume it himself)....
297 So.2d at 18. See also State v. Felix, 942 So.2d 5, 9 (Fla. 5th DCA 2006) ("Staleness should be evaluated in light of the particular facts of a given case, the nature of the criminal activity, and the evidence hoped to be found.").
In this respect, the timing of the circumstances described in the affidavit does not provide a blanket rule to determine *892 whether probable cause exists, but instead provides one of the circumstances the magistrate must consider in deciding whether the information provides a fair probability that contraband or evidence of a crime will be found in a particular place on the day the warrant issues.

B. The Trial Court's Review of the Magistrate's Decision in Resolving a Motion to Suppress.
"On a motion to suppress the fruits of a search in accordance with a warrant, a trial court examines whether the issuing magistrate had a substantial basis for concluding that probable cause existed, and this determination is made by examining the affidavit in its entirety." State v. Vanderhors, 927 So.2d 1011, 1013 (Fla. 2d DCA 2006) (citing Garcia v. State, 872 So.2d 326, 329 (Fla. 2d DCA 2004)). This "substantial basis" review is sometimes described as involving an "abuse of discretion" test. Vanderhors, 927 So.2d at 1013 (citing State v. Gonzalez, 884 So.2d 330, 333 (Fla. 2d DCA 2004)); see also Willacy v. State, 967 So.2d 131, 147 (Fla. 2007) (citing State v. Price, 564 So.2d 1239, 1241 (Fla. 5th DCA 1990)); State v. Woldridge, 958 So.2d 455, 458 (Fla. 2d DCA 2007) (same).[8] This is not, however, the type of discretion that a reviewing court gives to a tribunal that has been allowed to consider credibility, demeanor, and other similar factors when making a decision that the reviewing court is unable to consider on an equal footing. See, e.g., Estate of Despain v. Avante Group, Inc., 900 So.2d 637, 643 (Fla. 5th DCA 2005) ("[T]rial courts are granted discretion in making decisions because they have a superior vantage to observe what transpired in trial proceedings and to weigh the credibility of the witnesses, their testimony, and the evidence admitted."); Canakaris v. Canakaris, 382 So.2d 1197, 1202-03 (Fla.1980). Because the magistrate was restricted to considering only the content of the application for the warrant that is equally available to the reviewing trial court, this review is perhaps more aptly described as a review involving "great deference." See State v. Rabb, 920 So.2d 1175, 1180 (Fla. 4th DCA 2006) (citing United States v. Soderstrand, 412 F.3d 1146, 1152 (10th Cir.2005)). As explained in Gates:
[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause should be paid great deference by reviewing courts. A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant [and] courts should not invalidate... warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.
... Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a substantial basis for conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.
462 U.S. at 236, 103 S.Ct. 2317 (internal quotations and citations omitted).
*893 In the event the circuit court finds the affidavit facially sufficient to support a finding of probable cause, there are circumstances in which the defendant can still challenge the lawfulness of the search by questioning the veracity of the allegations included in the affidavit. Under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), if a defendant makes a substantial preliminary showing that the affiant knowingly or intentionally or with reckless disregard for the truth included a false statement in the affidavit, and that statement was necessary to the finding of probable cause, the circuit court must hold a hearing. If the defendant establishes these allegations by a preponderance of the evidence, the court must suppress the fruits of the search. The federal courts have extended the reasoning of Franks to apply to an allegation that law enforcement omitted material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading. United States v. Colkley, 899 F.2d 297, 300 (4th Cir.1990) (citing United States v. Reivich, 793 F.2d 957, 961 (8th Cir.1986)); see also Johnson v. State, 660 So.2d 648, 656 (Fla.1995) (adopting the reasoning of Colkley to extend Franks to apply to material omissions resulting from "intentional or reckless police conduct that amounts to deception").
Mr. Pilieci has not argued that the officer made any misstatements or false allegations in the short affidavit requesting the warrant, as was alleged in Franks. Mr. Pilieci contends instead that the detective omitted information about the original sale at another location, information about the nature of the one transaction at the residence that would suggest that the apartment was a mere situs for the transaction, and information about the failed investigation in the twenty-nine days after the sale that would diminish the possibility that drugs would be located in this apartment.
The trial court's review of these issues is perhaps best addressed in Johnson v. State, 660 So.2d 648 (Fla.1995):
In harmony with the central thrust of Franks, we hold that the Franks standard applies to alleged omissions from probable cause affidavits except that (1) the reviewing court must determine whether the omitted material, if added to the affidavit, would have defeated probable cause, and (2) the reviewing court must find that the omission resulted from intentional or reckless police conduct that amounts to deception.
Id. at 655-56; see also Pagan v. State, 830 So.2d 792, 807 (Fla.2002) ("The reviewing court must determine whether the omitted facts, if added to the affidavit, would have defeated probable cause and whether the omission resulted from intentional or reckless police conduct that amounts to deception."); State v. Panzino, 583 So.2d 1059, 1062 (Fla. 5th DCA 1991) ("A fact constitutes a material omission if a substantial possibility exists that knowledge of the omission would have altered a reasonable magistrate's probable cause determination. In determining whether a material omitted fact should invalidate the search warrant the reviewing court must view the affidavit as if it had included the omitted fact and then determine whether the affidavit provides sufficient probable cause."). As to this issue, then, a circuit court is not merely conducting a legal analysis of the facial sufficiency of the affidavit. Rather, the court must make separate factual and legal determinations to assess the accuracy of the affidavit, thus altering the trial court's analysis of the magistrate's decision.

C. Appellate Review of the Trial Court's Ruling on the Motion to Suppress.
A trial court's ruling on a motion to suppress comes to the appellate *894 court clothed with a presumption of correctness and, as the reviewing court, the appellate court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling. Murray v. State, 692 So.2d 157, 159 (Fla.1997). In the context of evidence seized by virtue of a search warrant, when no one claims that the police fabricated or omitted evidence from the warrant, this is once again primarily a legal examination of the evidence in the affidavit to determine whether it establishes probable causewith a presumption of correctness given to the trial court, which in turn gave great deference to the magistrate. See, e.g., Rabb, 920 So.2d at 1180-81. Whatever legal description might be employed to describe this test, in essence the appellate court needs to be entirely persuaded that both the trial court and the magistrate made an error when applying the law in deciding that the content of the affidavit established probable cause to search the building.
If the circuit court held an evidentiary hearing to address alleged misstatements or omissions, the appellate court must accept the circuit court's factual findings if they are supported by competent, substantial evidence, see Garcia, 872 So.2d at 329, and must view all of the evidence presented at that hearing in the light most favorable to sustaining the circuit court's ruling, Murray, 692 So.2d at 159. Presumably, the legal conclusion as to whether the false or omitted facts thus gleaned would have defeated probable cause would then be reviewed by the appellate court, as above, with a presumption of correctness given to the trial court's conclusion, which in turn would give great deference to the magistrate.

V. APPLYING THESE STANDARDS IN THIS CASE
We are unconvinced that the circumstances set forth in the affidavit, and only those circumstances, established a fair probability of finding illegal drugs in this apartment at the time the warrant was signed. The affidavit described only a single sale of an undescribed quantity of cocaine from an unidentified person temporarily located at the apartment on a single occasion at 9 p.m. on a day that was twenty-nine days prior to the issuance of the warrant. This affidavit provided no evidence that "John" resided at the apartment and actually provided evidence establishing that some other person pays the electric bill for the apartment. At best, the affidavit establishes a slight possibility and not a "fair probability" of finding drugs almost a month after a single sale transaction.
Even allowing for the great deference to the magistrate that the trial court was to exercise and even according a presumption of correctness to the trial court's ruling on the motion to suppress, we believe the trial court erred in finding a substantial basis to support the determination of probable cause. In so ruling, we note that both the trial court and the magistrate may well have been led to believe that a thirty-day bright-line rule existed and that even a single sale of drugs in a residence during the thirty-day period was automatically enough to establish probable cause. As discussed above, this is not the law. See Rodriguez, 297 So.2d at 18; Smith, 438 So.2d at 897-98. Even applying the five factors discussed in Montgomery, 584 So.2d at 67, this affidavit does not establish the necessary fair probability. The affidavit provided no evidence of a pattern of ongoing criminal activity; the nature of the object sought was drugs, and there was no indication in the affidavit that the drugs were prevalent in such an amount *895 that they could not be quickly consumed or disposed of; and there was no continuing flow of information or ongoing investigation.
Because we conclude that the affidavit was facially insufficient to establish probable cause, it is perhaps not entirely necessary for us to address whether law enforcement intentionally or recklessly omitted other material facts that amounted to a deception. We disagree, however, with the circuit court's holding that the information withheld from this affidavit was not material. Under the test announced in Johnson, the trial court as the "reviewing court" was required to "determine whether the omitted material, if added to the affidavit, would have defeated probable cause." 660 So.2d at 656. It is inconceivable to us that a magistrate who knew about the earlier sale in another location, about the small quantity of drugs involved in this sale, and about the failure of further efforts to make contact with Mr. Pilieci or achieve subsequent sales at the apartment would believe that there was a fair probability that this apartment was a storage location for drugs, as compared to the mere situs where "John" happened to sell drugs from his person on one occasion. We note that there is no dispute about these extra facts or the fact that they could have reasonably been included in this affidavit. We conclude these additional facts would have substantially changed the analysis by any magistrate who was not working on the assumption that a thirty-day bright line existed.
Because the trial court concluded that no material omission occurred, it did not proceed to determine whether the omission resulted from intentional or reckless police conduct that amounts to deception. Johnson, 660 So.2d at 656. That is a determination that would seem to depend upon demeanor and other factors that would be impossible for this court to evaluate directly on appeal. The failure to conduct this analysis might be deemed of no consequence given our conclusion that the affidavit was facially insufficient to establish probable cause for the issuance of a warrant. However, our determination that there was no probable cause to issue the warrant does not end the inquiry as to whether the evidence seized was subject to suppression. Even if a search warrant is issued by a magistrate in violation of the Fourth Amendment, the law does not automatically invoke the exclusionary rule as a remedy for this violation. Rather, the evidence obtained may still be admissible if law enforcement acted in good faith with reliance on the magistrate's legal decision when executing the warrant. See Leon, 468 U.S. 897, 104 S.Ct. 3405. This analysis is similar in nature to the second prong of Johnson, which also addresses the culpability of the officer's conduct in omitting facts from the affidavit. These questions are difficult to resolve at the appellate level, and we conclude they must be addressed on remand.

VI. LEON

In Leon, the United States Supreme Court recognized a "good faith exception" to the exclusionary rule. 468 U.S. at 905, 104 S.Ct. 3405. Under this exception, the Court held that physical evidence seized by officers who are reasonably relying on a warrant issued by a detached and neutral magistrate should generally be admissible in the prosecution's case-in-chief. Id. at 913, 104 S.Ct. 3405.[9] The Court reached *896 this result by balancing "the sometimes competing goals of, on the one hand, deterring official misconduct and removing inducements to unreasonable violations of privacy and, on the other, establishing procedures under which criminal defendants are acquitted or convicted on the basis of all the evidence which exposes the truth." Id. at 900, 104 S.Ct. 3405. Focusing on the exclusionary rule's deterrent effect, the court concluded that when a police officer acted reasonably in seeking to procure a search warrant from a neutral and detached magistrate on evidence that would arguably support probable cause, there was no misconduct to deter and thus little purpose in excluding the evidence.
The Leon opinion itself provides varying statements of the test to be applied in determining the admissibility of evidence obtained pursuant to a search warrant.[10] Effectively, the Court's opinion requires a court to admit evidence seized pursuant to an invalid search warrant when a police officer has acted in an objectively reasonable manner, in objective good faith, and as a reasonably well-trained officer would act in seeking the warrant from a detached and neutral magistrate and thus has reasonably relied upon the warrant in executing a search within the warrant's terms and scope. Conversely, suppression is required if the officer has acted dishonestly, recklessly, or under circumstances in which an objectively reasonable officer would have known the affidavit or the existing circumstances were insufficient to establish probable cause for the search.
The Leon court emphasized that the "reasonableness" standard it sought to apply was an objective one:
We emphasize that the standard of reasonableness we adopt is an objective one. Many objections to a good-faith exception assume that the exception will turn on the subjective good faith of individual officers. Grounding the modification *897 in objective reasonableness, however, retains the value of the exclusionary rule as an incentive for the law enforcement profession as a whole to conduct themselves in accord with the Fourth Amendment. The objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits.
Id. at 919 n. 20, 104 S.Ct. 3405 (internal quotations and citations omitted).
Subjectively, there would seem to be little doubt that the typical police officer could reasonably rely upon a warrant issued by a lawyer with sufficient experience and training to rise to the office of county or circuit court judge in Florida. If the signature of the judge established good faith on the part of the police officer, then evidence obtained pursuant to a search warrant in violation of the Fourth Amendment would never be subjected to the exclusionary rule.[11] Just as the objective "reasonably careful person"a paradigm created to fulfill the policies underlying negligence lawis undoubtedly a better driver of a car on some occasions than the ordinary and subjectively reasonable human driver, the objectively reasonable police officer preparing an affidavit to support a search warrant should be measured by a standard that promotes an appropriate level of professionalism within our law enforcement agencies in order to fulfill the policies underlying Leon.[12]
Although Leon's ruling is considered an "exception" to the exclusionary rule, the Court held that this exception would in fact act as a general rule in cases involving the issuance of a search warrant. Id. at 918, 104 S.Ct. 3405 ("suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule"). The court expressly acknowledged certain circumstances that would continue to merit the application of the exclusionary rule despite the issuance of a warrant. These circumstances are often characterized as four exceptions to the rule announced in Leon:
The Leon good faith exception applies in all but four limited sets of circumstances *898 .... (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role ...; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficienti.e., in failing to particularize the place to be searched or the things to be seizedthat the executing officers cannot reasonably presume it to be valid.
United States v. Martin, 297 F.3d 1308, 1313 (11th Cir.2002) (internal quotations and citations omitted). See also United States v. Harju, 466 F.3d 602, 606-07 (7th Cir.2006).
The first of these exceptions is, of course, the scenario presented in Franks, 438 U.S. 154, 98 S.Ct. 2674. Thus, an affidavit deemed facially sufficient to establish probable cause necessary to issue the warrant but which the defendant establishes was based upon law enforcement's knowing or reckless and material false statements or omissions will require the application of the exclusionary rule. See, e.g., People v. Maestas, 204 Cal.App.3d 1208, 1216, 252 Cal.Rptr. 739, 743-44 (Cal.Ct.App.1988) (discussing interplay between Leon and Franks). The remainder of these exceptions presume the warrant is facially insufficient to establish probable cause yet was nonetheless issued by the magistrate. These scenarios then require inquiry into the objective reasonableness of the officer's actions in obtaining the warrant. An evaluation of the officer's actions may then involve a review of facts other than the four corners of the warrant to determine whether a well-trained police officer would have known that the warrant was illegal despite the magistrate's authorization. Martin, 297 F.3d at 1318. Facts reflecting on an officer's good or bad faith might include: additional information supporting probable cause and known to the officer but left out of the affidavit, see Martin, 297 F.3d at 1318-19; whether the officer consulted with counsel before seeking the warrant, id.; the scope of the investigation the officer performed, Leon, 468 U.S. at 926, 104 S.Ct. 3405; details the officer omitted from the affidavit that might have defeated probable cause, see Maestas, 204 Cal. App.3d at 1216-19, 252 Cal.Rptr. 739, 744-46; or whether the officer had unsuccessfully sought a warrant from another magistrate, see Leon, 468 U.S. at 923 n. 23, 104 S.Ct. 3405; etc.
The case law generally recognizes that once the defendant has established that a warrant was issued without probable cause, or based upon knowing or reckless material misstatements or omissions of fact, the burden of proof on the Leon issue of good faith returns to the State. See, e.g., Harju, 466 F.3d at 607; United States v. Mykytiuk, 402 F.3d 773, 777 (7th Cir. 2005). This burden-shifting, however, appears largely illusory in the case law because the fact that a police officer seeks a warrant is deemed prima facie evidence of good faith. Leon, 468 U.S. at 922, 104 S.Ct. 3405 (noting that searches pursuant to a warrant will rarely require any deep inquiry into reasonableness because a warrant issued by a magistrate normally suffices to establish that a law enforcement officer acted in good faith); Harju, 466 F.3d at 607; Mykytiuk, 402 F.3d at 777. This presumption effectively places the onus on the defendant to reveal facts supporting a lack of good faith.
*899 In this case, the circuit court's findings that the affidavit facially supported a finding of probable cause and that there were no material omissionsfindings we now conclude were in errorprevented the parties or the court from addressing whether any material omissions were knowingly or recklessly made, or whether the officer's actions were made in good faith in light of all the circumstances leading up to the submission of the affidavit to the magistrate. For purposes of establishing the fair balance and deterrent effect intended by the Supreme Court in Leon, the test in this case would appear to center on whether the content of this affidavit was so lacking in evidence demonstrating a fair probability that contraband or evidence of a crime would be found in the apartment sought to be searched that it is entirely unreasonable to conclude that a police officer with the training and experience that qualifies an officer to apply for a warrant would believe that the affidavit actually supported the issuance of the warrant. In this case, we would also add that the trial court should consider not only the content of the warrant, but also the additional evidence that was known by the detective and not revealed to the magistrate. Because there may be additional evidence relevant to these considerations, we remand these matters to the circuit court for reconsideration.
Reversed and remanded for further proceedings consistent with this opinion.
STRINGER, J., and BAILEY, JENNIFER D., Associate Judge, Concur.
NOTES
[1] Mr. Pilieci's motion to suppress also sought to exclude evidence based upon a violation of the "knock-and-announce" rule. See § 933.09, Fla. Stat. (2005); Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). We affirm the trial court's ruling on that issue without further comment.
[2] § 893.135(1)(b)(1)(a), Fla. Stat. (2005).
[3] § 893.135(1)(k)(1)(a).
[4] § 893.13(6)(a).
[5] § 893.13(6)(b).
[6] § 893.147(1).
[7] Mr. Pilieci was charged in a separate information for the offense arising out of this sale. The judgment and sentence in that case are not a part of this appeal and are not affected by this appeal.
[8] It seems the genesis of the use of the language "abuse of discretion" in this context is the Fifth District's opinion in Price, 564 So.2d at 1241. Price cited State v. Jacobs, 437 So.2d 166 (Fla. 5th DCA 1983), to support this standard of review. Jacobs, however, did not utilize the "abuse of discretion" language adopted in Price. Rather, the Jacobs court simply stated, "The duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." 437 So.2d at 166.
[9] In Leon, the Court accepted the conclusion of the Ninth Circuit that the affidavit at issue did not establish probable cause to support the search, but at the same time accepted the district court's finding that the officer who obtained the warrant had acted in good faith, laying a "meticulous trail," conducting a lengthy surveillance, and consulting with three deputy district attorneys before seeking and obtaining the warrant from a magistrate. Id. at 904, 104 S.Ct. 3405.
[10] In the first paragraph of the opinion, the Court characterized the question as "whether the exclusionary rule should be modified so as not to bar the use ... of evidence obtained by police officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." Id. at 900, 104 S.Ct. 3405. Later, the Court quoted United States v. Peltier, 422 U.S. 531, 542, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), "If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may be properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Leon 468 U.S. at 919, 104 S.Ct. 3405. The Court also described the situation as one in which "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope" and one involving "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." Id. at 920, 922, 104 S.Ct. 3405. In footnote 23, the Court reiterated, "[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstancesincluding whether the warrant application had previously been rejected by a different magistratemay be considered." Id. at 923 n. 23, 104 S.Ct. 3405. In its concluding paragraph the Court stated, "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926, 104 S.Ct. 3405.
[11] We note that the Fifth District has analyzed the good faith test announced in Leon using reasoning that seems similar to this reasoning. See State v. Watt, 946 So.2d 108, 110 (Fla. 5th DCA 2007) ("In order to reject the application of the good faith exception in this case, we would need to conclude that an objectively reasonable police officer would have a better understanding of the law of search and seizure and probable cause than did the trial judge who issued the warrant. We are not willing to do so.").
[12] Some courts have compared the analysis of this objective standard to the analysis utilized in cases under 42 U.S.C. § 1983 involving the affirmative defense of qualified immunity. See United States v. Harju, 466 F.3d 602, 607 (7th Cir.2006) (quoting United States v. Koerth, 312 F.3d 862, 869 (7th Cir.2002)). Although there is a degree of logic in equating the good faith standard for Leon to the good faith standard applied to the affirmative defense of qualified immunity under 42 U.S.C. § 1983, we are not entirely convinced by the Harju analysis. See, e.g., Leon, 468 U.S. at 922 n. 23, 104 S.Ct. 3405 (comparing the need for an objective test to the elimination of a subjective test in qualified immunity cases, noting, "The situations are not perfectly analogous[.]"). The good faith standard for purposes of qualified immunity exists to prevent monetary judgments from being entered against good police officers who make understandable mistakes. The good faith exception in Leon is intended to limit the use of the exclusionary rule to cases that can serve an instructive purpose to deter or prevent deficient affidavits from law enforcement agencies in the future. This educational purpose, intended to improve the professionalism of law enforcement departments, would suggest that good faith under Leon should be somewhat less forgiving of police errors than the standard employed in cases where civil judgments are sought against them.