CONNER, J.
Ronald Redini appeals the denial of his motion to suppress evidence of his possession of child pornography seized pursuant to a search warrant. The primary legal issue presented by this appeal is whether information supplied to law enforcement by Redini’s roommate was sufficient for the issuance of a search warrant. Redini contends the information supplied by his roommate was not sufficiently reliable to show probable cause to search. Redini also contends the affidavit in support of the warrant was defective because the detective preparing the affidavit omitted or misrepresented material facts. He further contends his roommate was a state agent and not a citizen-informant. We find the information by the roommate was sufficiently reliable to show probable cause to search; the trial court made correct rulings regarding the omissions or misrepresentation of material facts in the affidavit; and the roommate was not a state agent. Thus, we affirm the decision of the trial court denying the motion to suppress. The issue regarding the roommate being a state agent does not warrant discussion. The issue regarding the purported omissions or misrepresentation of material facts is discussed briefly. Most of our analysis revolves around the issue of whether the information from the roommate was sufficiently reliable to establish probable cause to search.

Factual Background and Trial Court Proceedings

The information concerning Redini’s possession of child pornography was provided to law enforcement in a taped sworn statement by D.C., Redini’s roommate of five months. D.C. was 19 at the time he spoke to law enforcement and Redini was 36. In preparing the affidavit to apply for a search warrant, the detective related the following information from D.C.’s taped statement: Redini and D.C. did not share a bedroom and were not romantically involved, but D.C. knew of Redini’s pedophile proclivities from a combination of experiences. D.C. had known Redini when he was a child and they both lived in Illinois. D.C. told the detective that Redi-ni had sexually touched his genitals when D.C. was 10. He was afraid to report the incident and Redini moved away from Illinois shortly after it happened. Shortly after moving into Redini’s apartment, D.C. learned that Redini had a collection of child pornography consisting of CDs, DVDs, and images stored in password-protected files on Redini’s computer. D.C. stated that Redini had shown him movies of boys, ages 9 to 13, engaging in oral and anal sex with adult men approximately ages 35 to 50. Redini also showed him webcam recordings of naked boys, ages 8 to 12, fondling themselves. D.C. informed the detective that Redini speaks with children on his webcam and masturbates. After giving his taped sworn statement, D.C. returned to the detective’s office and told him that Redini had a box in his closet that contained child pornography that D.C. wanted to show the detective.
*382 The detective also stated in the affidavit that he accepted D.C.’s invitation to go to the apartment that D.C. shared with Redi-ni to view the alleged pornographic pictures. While the detective waited in the kitchen, D.C. went to Redini’s bedroom, where D.C. represented that he was permitted to go, and returned with a box of photographs. Thirteen of the photographs were of young boys, four of which showed the same two naked boys, ages 4 to 6, taking a bath, and a fifth picture of a naked boy, age 10 to 12. One of the pictures of the boys in the bathtub showed one of the boy’s genitals. The detective stated in the affidavit that none of the pictures were pornographic.
After the detective viewed the non-pornographic pictures of the naked boys, D.C. then volunteered to get allegedly pornographic computer discs that he had helped Redini move to the garage. The detective asked him to look for the discs, if he had permission to enter the garage, but D.C. was unable to find them. The detective did not disclose that information in the affidavit.
Also not disclosed in the affidavit is the fact that the detective asked D.C. to try to obtain the password for Redini’s computer, but D.C. could not acquire the password. Despite these nondisclosures, the detective represented in his affidavit, based on D.C.’s sworn taped statement, that Redini possessed an extensive collection of child pornography in his residence and on his computer.
The trial judge issued a search warrant based on the detective’s probable cause affidavit. In executing the search warrant, the detective seized two computers belonging to Redini.[1] Based on images found on the computers, Redini was charged by information with possession of sexual performance by a child. He moved to suppress the evidence seized.
Despite being aware that D.C. was purportedly a victim of sexual abuse by Redini with possibly an ulterior motive, the trial judge nonetheless determined that D.C. was a citizen-informant. Because D.C. represented he had access to the areas where he looked when he invited the detective to Redini’s apartment, the trial judge concluded the search was not improper and D.C. was not a state agent. He also concluded that the detective’s affidavit of probable cause was flawed, “[b]ut just because it’s not a model, doesn’t mean that it’s not enforceable.” The trial court denied the suppression motion, whereupon Redini pled guilty, pursuant to a plea agreement, to three counts of possessing sexual performance by a child, preserving his right to appeal the denial of his motion to suppress.

Legal Analysis

As explained by Judge Altenbernd in Pilieci v. State, 991 So.2d 883, 892 (Fla. 2d DCA 2008):
“On a motion to suppress the fruits of a search in accordance with a warrant, a trial court examines whether the issuing magistrate had a substantial basis for concluding that probable cause existed, and this determination is made by examining the affidavit in its entirety.” State v. Vanderhors, 927 So.2d 1011, 1013 (Fla. 2d DCA 2006) (citing Garcia v. State, 872 So.2d 326, 329 (Fla. 2d DCA 2004)).... Because the magistrate was restricted to considering only the content of the application for the warrant that is equally available to the reviewing trial court, this review is perhaps more *383 aptly described as a review involving “great deference.” See State v. Rabb, 920 So.2d 1175, 1180 (Fla. 4th DCA 2006) (citing United States v. Soderstrand, 412 F.3d 1146, 1152 (10th Cir.2005)). As explained in Illinois v. Gates, [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ]:
[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate’s determination of probable cause should be paid great deference by reviewing courts. A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment’s strong preference for searches conducted pursuant to a warrant [and] courts should not invalidate ... warrants] by interpreting affidavit[s] in a hyper-technical, rather than a commonsense, manner.
[[Image here]]
462 U.S. at 236, 103 S.Ct. 2317 (internal quotations and citations omitted).
If the trial court determines the affidavit in support of the search warrant is facially sufficient, the defendant can still challenge the lawfulness of the search by questioning the veracity of the allegations in the affidavit. Pilieci, 991 So.2d at 893. Intentionally or recklessly omitted facts, as well as intentionally or recklessly inaccurate facts, may be contested on a motion to suppress. Id.
In this case, the trial court conducted an evidentiary hearing to resolve the claims by Redini that the search was illegal because allegedly some significant facts were omitted from the affidavit and some of the facts were inaccurate. The trial court considered the evidence on those issues and determined that there was no intentional omission or misrepresentation of facts by the detective, and the inclusion of the facts Redini claims were omitted would not have altered the decision of the magistrate to issue the warrant. The trial court’s rulings on these matters are clothed with the presumption of correctness, and we must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling. Id. at 894. We find no errors by the trial court concerning issues of omission or misrepresentation of facts in the affidavit.
The trial court’s determination that the affidavit was facially sufficient merits discussion. Viewing it as a “close call,” the trial court determined that the information supplied by D.C. to the detective was reliable and sufficient to establish probable cause to search. The trial court’s decision was grounded upon determining D.C. was a citizen-informant.
A citizen-informant has been described as one “who approaches the police in person to report criminal activity.” Baptiste v. State, 995 So.2d 285, 291 (Fla.2008). “A tip from a citizen[-]informant falls at the higher end of the reliability scale.” Id. More importantly, “[t]ips from known reliable informants, such as an identifiable citizen who observes criminal conduct and reports it, along with his own identity to the police, will almost invariably be found sufficient to justify police action.” J.L. v. State, 727 So.2d 204, 206 (Fla.1998). Some of the factors which tend to establish the reliability of information given by citizen-informants are 1) a citizen-informant is motivated by the desire to further justice, 2) a citizen-informant who directly approaches law enforcement may be held accountable for false statements, 3) a face-to-face tip provides the opportunity to observe the demeanor and evaluate the credibility of the informant, and 4) there is greater potential for reprisal by the defen *384 dant than an anonymous tip. Baptiste, 995 So.2d at 291.
Our review of the affidavit in support of the search warrant in this case satisfies us that there were sufficient facts alleged to establish the reliability of D.C.’s statements that Redini possessed child pornography on his computer. D.C. directly approached law enforcement and gave a sworn statement regarding Redini’s criminal conduct, for which D.C. could be held accountable (making the false report of a crime, as well as perjury). His face-to-face contact with the detective on more than one occasion provided the detective with the opportunity to observe his demeanor and evaluate his credibility. The magistrate could properly infer that the detective felt D.C.’s credibility was sufficient to justify his time and good faith effort to apply for and execute a search warrant. Finally, the fact that D.C. lived with Redini would indicate D.C. was willing to risk reprisal from Redini.
As discussed above, an additional factor which tends to establish the reliability of information given by citizen-informants is their motivation and desire to further justice. Redini contends that D.C.’s statement that Redini molested him when he was 10 suggests D.C. had a motive to make false accusations against him. For that reason, Redini argues, law enforcement and the magistrate should have viewed his statements with skepticism. In support of this argument, Redini relies on our decision in Dial v. State, 798 So.2d 880 (Fla. 4th DCA 2001), and the Fifth District’s decision in Roper v. State, 588 So.2d 330 (Fla. 5th DCA 1991). In both of those cases, the informants were identified, and they were living or had been living recently with the defendant at the time they went to law enforcement. However, the facts of Dial and Roper are very distinguishable from the facts in this case. In both of those cases, the informants went to law enforcement to make a criminal complaint because they were victims of domestic violence by the defendant. In the course of making their complaint, each informant also felt the need to accuse the defendant of a crime for which the informant was not a victim. In Dial and Roper, the defendant sought to suppress evidence of a crime that had nothing to do with the original complaint made to law enforcement by the informant. The reason evidence was suppressed by the appellate court in both cases is because the circumstances surrounding the informant going to the police station should have caused concern that the informant had a reason to fabricate an accusation against the defendant.
We view the circumstances of D.C.’s going to law enforcement in this case to be different. D.C.’s disclosure that he had been molested by Redini nine years earlier, coupled with his observation of Redini repeatedly observing child pornography and bragging about engaging in sex with young boys, supports the inference that he was reporting Redini’s behavior to protect other children and promote justice. Moreover, D.C.’s willingness to make such an embarrassing disclosure about himself to law enforcement was an additional indicia of reliability for his statements.
The affidavit also contains a detailed listing of observations and conversations D.C. had with Redini to describe how Re-dini “brought [D.C] into ‘his world’” of child pornography. That detailed description was consistent with common behavior of child pornographers generally as known to the detective from law enforcement training and experience discussed in the affidavit and is another factor to be considered in assessing the reliability of his statements.
*385 Having determined the trial court made correct rulings on all the issues raised, we affirm the denial of the motion to suppress.

Affirmed.

WARNER and POLEN, JJ., concur.

. The detective also seized D.C.’s computer to check and see if he might be involved in child pornography as well.