NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

RICARDO CORONADO,                    )
                                     )
          Appellant,                 )
                                     )
v.                                   )          Case No. 2D13-6123
                                     )
STATE OF FLORIDA,                    )
                                     )
          Appellee.                  )
                                     )
_____)

Opinion filed October 8, 2014.

Appeal from the Circuit Court for
Hillsborough County; Ronald Ficarrotta,
Judge.

Howard L. Dimmig, II, Public Defender, and
Richard J. Sanders, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Peter Koclanes, Assistant
Attorney General, Tampa, for Appellee.


VILLANTI, Judge.

          Ricardo Coronado appeals the withhold of adjudication and the sentence

imposed after he pleaded no contest to charges of possession of methamphetamine

and possession of drug paraphernalia while reserving his right to appeal the denial of

his dispositive motion to suppress.  Because the warrant affidavit was insufficient to

establish probable cause to search the residence where the drugs were found, we reverse and remand for discharge.

On August 15, 2013, Deputies Christopher Maffei and Ryan Daniels of the Hillsborough County Sheriff's Office submitted a sworn application for a search warrant. The affidavit initially outlined the experience both officers had in investigating narcotics crimes. It then stated that both officers had responded to an address in Hillsborough County to serve an outstanding warrant on one Eddie Rodriguez. The affidavit did not indicate the nature of the offenses that supported the warrant for Rodriguez's arrest.

Upon arriving at the address in question, the officers saw a grey Ford Ranger pickup truck parked on the premises. When they ran the license plate number affixed to the truck to see whether the vehicle belonged to Rodriguez, they discovered that the plate was actually registered to a 1997 blue Audi that had been reported stolen in Hillsborough County sometime in 2013.

The officers made contact with the owner of the house, Leovijilda Coronado. After they determined that Rodriguez was not on the property, they asked about the pickup truck. Mrs. Coronado told the officers that the truck belonged to her son, Ricardo Coronado, and she summoned him from the house to speak with the officers. Mr. Coronado told the officers that he had found the license plate in the ditch next to the house about a week earlier and that he assumed it was abandoned, so he took it. As Mr. Coronado was talking to the officers, they noticed numerous vehicles and vehicle parts in the backyard behind the residence. In response to further questioning, Mr. Coronado told the officers that he scrapped vehicles for their parts so that he could repair vehicles for friends.

The officers requested permission to search the backyard for any vehicle parts that might belong to the stolen Audi, and Mr. Coronado agreed. As Mr. Coronado was walking the officers through the backyard, Deputy Maffei claimed he detected the odor of marijuana emanating from a small shed in the yard. When the officers asked Mr. Coronado if they could search the shed, he indicated that they would need to seek permission from his mother. The officers then asked Mrs. Coronado for permission to search the shed, but she refused permission.

Based on these events, Deputy Maffei drafted an affidavit that requested authority to search not only the shed, backyard, and vehicles on the property, but also the Coronado residence. Despite containing no facts other than those noted above, the affidavit alleged that the officers had reason to believe that the residence was "being used in violation of the Florida Comprehensive Drug Abuse Prevention Act and/or Theft statute 812.014." The magistrate authorized the warrant on August 15, 2013, and law enforcement executed the warrant the same day. No marijuana was found in the shed or anywhere else on the property; no parts belonging to the stolen Audi were found; and no other stolen car parts were found either. However, the search of the residence revealed a small quantity of methamphetamine.

After being charged with possession of the methamphetamine, Mr. Coronado filed a motion to suppress. The trial court held an evidentiary hearing on the motion, at which both Deputy Maffei and Deputy Daniels testified. Deputy Maffei testified that the shed from which the odor of marijuana was emanating was a small wooden shed that was about thirty feet away from the house. He also clarified that it was the odor of burnt marijuana that he had detected. When Deputy Maffei asked Mr.

Coronado about the odor, Mr. Coronado responded that he had no idea why anyone would smell marijuana coming from the shed. However, Mr. Coronado refused to permit the officers to look in the shed, saying that the property belonged to his mother. Mrs. Coronado subsequently refused the officers permission to look in the shed.

At that point, according to Deputy Maffei, he decided to get a warrant based on the odor emanating from the shed and also "partly based on the fact that a stolen vehicle part was located on the property and strewed [sic] about the property there were numerous other vehicles, parts." He included the residence in the affidavit because "[i]n our experience, when we write search warrants for homes and trailers such as this, it's not uncommon for us to locate other items of evidentiary value in adjacent structures, like sheds, vehicles and what have you." And in this case, "[s]eeing that the residence was so close to the structure where we got the odor of marijuana, we have reason to believe there may be also paraphernalia or items of evidentiary value in the structure of the home."

Deputy Daniels also testified at the motion hearing. He confirmed that he smelled the odor of marijuana coming from a shed that was about thirty feet behind the house. Deputy Daniels also clarified that when Deputy Maffei left the property to obtain the search warrant, Deputy Daniels remained at the property to ensure that no one went into or out of the shed. The fact that Deputy Daniels was waiting at the property while the affidavit was prepared and reviewed was not contained in the affidavit.

In arguing that the search warrant was valid, the State asserted that it would not be reasonable to limit the officers to just the location where they actually smelled the marijuana. Instead, the State argued that the odor of marijuana coming

from the shed gave the officers probable cause "to search everything on that property to look for anything he thought would come back to any criminal activity going on." Mr. Coronado argued that "smelling the odor of marijuana in a shed in somebody's yard does not give you the right to search the residence. It does not extend PC to your home." The trial court denied the motion to suppress with no explanation, either in its oral or written ruling.

On appeal from a ruling denying the suppression of evidence seized pursuant to a search warrant, "[t]his court's review consists of 'a legal examination of the evidence in the affidavit to determine whether it establishes probable cause—with a presumption of correctness given to the trial court, which in turn gave great deference to the magistrate.' " Barrentine v. State, 107 So. 3d 483, 484 (Fla. 2d DCA 2013) (quoting Pilieci v. State, 991 So. 2d 883, 894 (Fla. 2d DCA 2008)). "In determining whether probable cause exists to justify a search, the trial court must make a judgment, based on the totality of the circumstances, as to whether from the information contained in the warrant there is a reasonable probability that contraband will be found at a particular place and time." Pagan v. State, 830 So. 2d 792, 806 (Fla. 2002) (citing Illinois v. Gates, 462 U.S. 213 (1983)). Hence, the warrant affidavit must establish via case-specific facts a nexus between the place to be searched and evidence of probable criminality. See Burnett v. State, 848 So. 2d 1170, 1173 (Fla. 2d DCA 2003). Mere speculation that some evidence of criminal activity might be found if a broad enough search is permitted is insufficient to support the issuance of a warrant. See, e.g., Dyess v. State, 988 So. 2d 146, 149 (Fla. 1st DCA 2008).

Here the question for this court is whether the facts set forth in the search warrant affidavit establish a reasonable probability of finding narcotics and/or stolen vehicle parts in the Coronado residence. The answer is clearly no. The facts set forth in the affidavit did establish probable cause to obtain a warrant to search the shed for evidence of narcotics based on the officers' having smelled the odor of marijuana emanating from the shed. Cf. Smith v. State, 904 So. 2d 534, 537 (Fla. 1st DCA 2005) (noting that, like the "plain view" doctrine, the "plain smell" doctrine provides probable cause to search the location of the smell). The affidavit also arguably established probable cause to search the yard and the vehicles in it for evidence of theft of car parts based on the "stolen" license plate and the various car parts strewn throughout the yard. However, the affidavit contained absolutely no facts that would establish probable cause to believe that the Coronado residence itself contained any evidence of illegal activity, and mere proximity, standing alone, cannot create probable cause where none otherwise exists. Thus the affidavit was insufficient on its face to support the issuance of a search warrant for the residence.

In this regard, this case is quite similar to that of Thompson v. State, 548 So. 2d 806 (Fla. 1st DCA 1989). There, officers received a tip from an informant that Thompson was cultivating marijuana in a greenhouse attached to the side of his trailer home. Id. at 807. Another informant likewise reported that he had seen marijuana plants growing in the greenhouse. Id. This second informant also reported that he had seen Thompson removing "something" from the greenhouse and taking it into the trailer. Id. Based on these reports, officers obtained a search warrant for both the greenhouse and the trailer. Id. Thompson moved to suppress the items obtained from the trailer

and greenhouse pursuant to the search warrant, but the trial court denied the motion. Id. On appeal, however, the First District reversed in part, noting that while the affidavit contained a sufficient factual predicate to support the search of the greenhouse, it did not contain a sufficient factual predicate to support the search of the trailer because "an assertion that marijuana has been observed growing immediately outside a dwelling is not sufficient in itself to support a warrant for a search of the dwelling." Id. at 808. The court also noted that the assertion that "something" had been removed from the greenhouse and taken into the trailer, without a specific indication of what was removed and taken inside, was also insufficient to support the warrant for the search of the trailer. Id.; see also Howard v. State, 483 So. 2d 844, 846 (Fla. 1st DCA 1986) (holding that observation of marijuana growing in the yard of a residence was insufficient to support a warrant for a search of the residence itself).

Here, as in Thompson and Howard, the detection of the odor of marijuana coming from the shed on the Coronado property was equivalent to an observation of contraband and was sufficient to support the search warrant as it pertained to the shed. Notably, Mr. Coronado does not challenge the sufficiency of the warrant as it relates to the search of the shed. However, the detection of the odor coming from the shed, without more, was insufficient to support a search warrant for the residence itself. The affidavit at issue contained not a single fact that would even arguably support a conclusion that any evidence of narcotics violations or stolen property would be found within the Coronado residence. Without case-specific facts providing a nexus between the odor in the shed and the residence itself, the warrant was invalid as to the residence.

- 7 -

In support of the trial court's ruling, the State argues that the good faith exception to the warrant requirement applies to these facts. The good faith exception permits the use of evidence seized pursuant to a warrant unsupported by probable cause "when a police officer has acted in an objectively reasonable manner, in objective good faith, and as a reasonably well-trained officer would act in seeking the warrant from a detached and neutral magistrate and thus has reasonably relied upon the warrant in executing a search within the warrant's terms and scope." Pilieci, 991 So. 2d at 896. However, the good faith exception does not apply when "the officer has acted dishonestly, recklessly, or under circumstances in which an objectively reasonable officer would have known the affidavit or the existing circumstances were insufficient to establish probable cause for the search." Id.; see also Gonzalez v. State, 38 So. 3d 226, 230 (Fla. 2d DCA 2010); Garcia v. State, 872 So. 2d 326, 330 (Fla. 2d DCA 2004) (holding that good faith exception did not apply when the search warrant affidavit failed to establish a nexus between the objects of the search and the residence to be searched). Moreover, the good faith exception does not apply to a search warrant for a residence when "[t]he supporting affidavit contains absolutely no allegation in regard to any infraction of the law occurring inside the home." Howard, 483 So. 2d at 847.

Here, an objectively reasonable officer would have known that the search warrant affidavit, which contained not a single allegation to support a conclusion that narcotics, stolen items, or other evidence of criminal activity would be found in the Coronado residence, was insufficient to establish probable cause for a search of that residence. Therefore, the good faith exception does not apply, the motion to suppress

should have been granted, and the trial court erred in denying it.  Hence, we reverse and remand for discharge.

Reversed and remanded for discharge.


SILBERMAN and CRENSHAW, JJ., Concur.