# Third District Court of Appeal
## State of Florida

Opinion filed May 13, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1324
Lower Tribunal No. F22-23260
_____

**Leonardo Cabrera,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Cristina Miranda, Judge.

Daniel J. Tibbitt, P.A., and Daniel J. Tibbitt, for appellant.

James Uthmeier, Attorney General, and Jason Michael Ross, Assistant Attorney General, for appellee.

Before FERNANDEZ, MILLER and LOBREE, JJ.

PER CURIAM.

Leonardo Cabrera appeals the trial court's order denying his motion to suppress his statements, rooster paraphernalia, and other documents related to Cabrera's cockfighting and animal cruelty charges. In the narrow circumstances before us today, we reverse the trial court's order and remand the case with directions that the trial court grant Cabrera's motion to suppress.

On January 18, 2023, the State filed an Information charging Cabrera with two counts relating to owning and selling roosters and possessing materials used for cockfighting and one count of animal cruelty. Cabrera filed a motion to suppress and argued that Miami-Dade Police violated his constitutional right to be free of unlawful searches and seizures when the police officer entered Cabrera's property. Cabrera claimed that Detective Kevin Rodriguez had alleged there was a federal search warrant issued for the property for reasons unrelated to cockfighting, but the federal search warrant had not been produced to the defense. Cabrera alleged that he did not know if the federal search warrant existed and, if it did exist, whether the federal warrant was properly issued. The motion to suppress alleged that Detective Rodriguez had no idea of any criminal activity at Cabrera's residence until he was called by the FBI, which was after federal authorities had entered the property on an unknown basis. Cabrera asserted that he

2

never consented to the search and that subsequent statements he gave were not freely and voluntarily given. The State did not file a response to the motion.

At the hearing on the motion to suppress, the State contended it did not have access to the federal search warrant. The defense presented its case first, and the following evidence was introduced at the hearing: Cabrera testified that on December 20, 2022, the subject property at 24480 S.W. 123rd Avenue was his home, and he was living there. His entire property is surrounded by a six-foot-fence. The FBI showed up at his door and "simply busted the door open and came in." There were eighty to one-hundred law enforcement officers that showed up at his house with bullet proof cars and "one of those war tanks." The FBI agents busted his door open, broke a shed he had on his property, and broke his car. He asked to see a search warrant, but the agents did not provide him one or ever show him one. The FBI did not obtain Cabrera's consent, nor did any agent speak to him. After the FBI entered his property and did their search, Miami-Dade police arrived and arrested Cabrera. He asked the Miami-Dade officers for a warrant, but Miami-Dade police also never showed him a warrant. Cabrera never consented to their search.

3

Cabrera testified he did not refuse to speak "because I said, well, I haven't committed any crime, so I have nothing to hide." He was advised he had a right to remain silent, had a right to an attorney, and that if he could not afford one, one would be appointed for him. He testified that his statements to police were made only after law enforcement entered his property without consent and without showing him a warrant. The defense then rested.

Next, the State called Miami-Dade Police Detective Rodriguez. Detective Rodriguez was on a task force that worked on federal investigations with the FBI. On the day in question, he was on the perimeter of Cabrera's property while the FBI executed its investigation. The FBI had contacted Detective Rodriguez in advance because they "needed assistance from state and local authorities in execution of the search warrant that he had for the property." Detective Rodriguez was advised that there was a federal search warrant for the subject property and preliminary information told them the FBI was investigating a kidnapping.

Detective Rodriguez described the property as an "open parcel of land surrounded by a fence," with various structures including an RV, a house type residence in the rear, and makeshift structures on the property. Over twenty federal agents were on the scene. Detective Rodriguez entered the

4

property and saw evidence of cockfighting. He stated, "Once the FBI conducted their initial interview of the Defendant at that point they came over to me, they advised that he was under Miranda, they already Mirandized him. I approached [defendant] and reminded him that he was still under Miranda if he wished to speak to me at this point, which he agreed to." Detective Rodriguez testified that Cabrera then made inculpatory statements about being involved in cockfighting. He arrested Cabrera and applied for a search warrant from a Miami-Dade judge based on what Detective Rodriguez had observed from being on the property and learned from conversations with the federal agents and Cabrera. Detective Rodriguez stated that a Miami-Dade judge approved the search warrant, and Miami-Dade County Animal Services euthanized the roosters on the subject property.

Detective Rodriguez testified he had knowledge about the parameters of the federal search warrant but was not authorized to speak about it. He stated he was not involved in the federal warrant, he himself had never seen it, and he did not say what the probable cause was to obtain the federal warrant. When asked why he felt he could go onto the property, he stated, "The FBI had a [sic] ops plan as well as several agents on scene. We advised that they were conducting a federal investigation on to the property. As being a task force officer I worked with those agents closely before and we've

5

conducted numerous investigations together." He stated he believed the FBI's information to be reliable and based his search on the FBI's representations of what they saw on Cabrera's property.

Detective Rodriguez testified that by the time he got the State search warrant, Cabrera had already been arrested and was in custody. When the State warrant was executed the next day, Cabrera was not at the property. There was no preexisting Miami-Dade investigation of this property, and Detective Rodriguez had no knowledge about cockfighting at the property until he went onto the property. The State then rested.

The defense argued that without the production of the alleged federal search warrant, which they had requested but had not been provided, there was no way to determine whether the search was proper based on that alleged warrant. It argued that Cabrera had an expectation of privacy in his home and fenced property. The defense contended that without more information than what had been presented, the legality of Detective Rodriguez's entry could not be determined because the State warrant was only issued after Detective Rodriguez entered the property, and the observations he made during that illegal search and seizure were the sole basis for the State warrant.

The State argued that Detective Rodriguez was contacted after federal officers observed a State law violation upon their entry onto Cabrera's property. The State contended the defense had not shown there were any false statements in the federal warrant, and the statements in support of the State warrant were true and supported by Detective Rodriguez's personal observations.

The defense responded that it was not arguing that Detective Rodriguez lied in the State warrant application, but rather that what Detective Rodriguez observed and used for the application of the State warrant was the fruit of his illegal entry onto Cabrera's property. No evidence had been presented regarding the existence or validity of any federal search warrant. The State suggested that maybe the trial court could do an *in camera* review of the federal warrant and that it would reach out to the FBI to see if they could get a copy of the warrant. The court thus reset the case for the next day.

The next day, the State advised the trial court that the federal prosecutor told the State the file was sealed and "under no circumstances was I to provide this Court with any copies of that search warrant without express approval from the federal judge." The court stated that if it saw the warrant "the only thing I would be verifying is that there in fact was a warrant

and that the officers we acting in good faith." The court further stated that the "validity of the warrant wouldn't really be relevant for [Detective Rodriguez's] purposes and his actions subsequent to it."

The trial court denied the motion to suppress and found the following:

> Officer Rodriguez was acting in good faith as part of a task force that he works on with the FBI and serves as local support to most of their investigations or many of their investigations . . . He was apprised of the fact that there was a federal warrant through the testimony of the Defendant.
> The Defendant indicated that there were 80 to 100 federal agents there. The Miami-Dade officer said 20 plus. . . . The Defendant said there was an armored car, there was an armored tank and everybody had FBI clothing and attire that identified themselves as FBI agents.
> There is no evidence to support the fact that this was an unlawful warrant. It leads you to reasonably believe based on the show of force and all of the groups that were there with the staging location where the Miami-Dade Police officers were to follow up with support. That there had been a process that was followed in order to enter into the premises. And then based on the fact that what they were looking for in the federal warrant was not discovered. Because we heard that it was a kidnapping. But there was in plain view evidence of an additional crime. The officers went in and did their appropriate investigation and we did have a copy of the warrant - -
>      . . .
> . . . So we have a copy of the state warrant which seems valid and wasn't contested and was served. So based on the testimony that I've head [sic] thus far and on the information received of the ongoing investigation and the fact that the federal warrant is in fact sealed and the representation from the AUSA, as well as the Chief Counsel for the FBI of its existence, I'm just skipping over that part as to whether or not it's valid because I can't make a determination on the validity of the warrant. But because there's another agency that acted upon it I don't really have to come to that conclusion.

And I'm going to ahead [sic] and I'm going to deny the Defendant's motion to suppress the evidence of the rooster fighting paraphernalia that was discovered and at this point as well as the statements.

On appeal, Cabrera argues that the trial court erred in denying his motion to suppress because no warrant was introduced at the suppression hearing, nor did any witness testify to the factual basis behind any warrant that existed before the search, questioning, and arrest. He contends that because no warrant exception applies, Detective Rodriguez's entry onto his fenced property was unlawful. Under the particular circumstances of Cabrera's case, we agree.

The determination regarding a motion to suppress is subject to mixed questions of law and fact, as the trial courts findings are presumed correct if supported by competent, substantial evidence, but the application of law to those facts is reviewed de novo. State v. Prieto, 415 So. 3d 918, 918 (Fla. 3d DCA 2025). When a court is reviewing the issuance of a search warrant, "the duty of reviewing courts is simply to ensure that the magistrate had a 'substantial basis for … conclude[ing]' that probable cause existed." DeLaPaz v. State, 453 So. 2d 445, 446 (Fla. 4th DCA 1984) (quoting Illinois v. Gates, 462 U.S. 213, 214 (1983)). "[A]lthough the reviewing court 'should afford a magistrate's probable cause decision great deference,' it should 'not defer if there is no "substantial basis for concluding that probable cause

9

existed.'"'" State v. Rabb, 920 So. 2d 1175, 1180-81 (Fla. 4th DCA 2006) (citation omitted); Merrill v. State, 849 So. 2d 1175, 1177 (Fla. 3d DCA 2003) ("Thus, confining our analysis to the four corners of the affidavit, as we are obligated, we must determine whether the totality of the sworn factual averments contained therein created a substantial basis for concluding that probable cause existed." (internal citation omitted)).

In addition, the "fellow officer rule," or the "collective knowledge doctrine," in Florida allows a state police officer to rely on information from federal agents to establish probable cause. State v. Bowers, 87 So. 3d 704, 707 (Fla. 2012). "The primary purpose of the rule is 'to assist officers investigating in the field to make arrests and conduct searches' because 'an officer in the field may need to act immediately based on upon what he or she is told by a fellow officer.'" Montes-Valeton v. State, 216 So. 3d 475, 478 (Fla. 2017) (internal citation omitted) (emphasis in original). When the defendant makes an initial showing that no warrant exists or that a search was warrantless, the burden shifts to the State and "the prosecution ha[s] to prove probable cause for (or otherwise explain) the *fait accompli* at the suppression hearing, because the State did not justify the search before the fact, by showing a judge grounds for issuance of a warrant." State v. Setzler, 667 So. 2d 343, 345 (1995). "As a practical matter, absence of a search

warrant in the court file sufficed to shift the burden of going forward to the prosecution." Id.

Furthermore, "[o]n a motion to suppress the fruits of a search in accordance with a warrant, a trial court examines whether the issuing magistrate had a substantial basis for concluding that probable cause existed, and this determination is made by examining the affidavit in its entirety." State v. Vanderhors, 927 So. 2d 1011, 1013 (Fla. 2d DCA 2006). Importantly, in determining the legality of the warrant, consideration of testimony taken at the hearing on the motion to suppress which does not appear in the affidavit in support of the search warrant is improper. Montgomery v. State, 584 So. 2d 65, 66 n. 1 (Fla. 1st DCA 1991). Courts must base their probable cause determination solely on what was presented to the issuing magistrate in the affidavit, thus confining their review to a consideration of the four corners of the probable cause affidavit. See Id. at 66-67; Rabb, 920 So. 2d at 1180. While the State does not bear the initial burden when a valid warrant exists, it must be able to produce the warrant and affidavit if challenged because "a trial court examines whether the issuing magistrate had a substantial basis for concluding that probable cause existed, and this determination is made by examining the affidavit in its

11

entirety." State v. McNeela, 367 So. 3d 557, 560 (Fla. 2d DCA 2023) (citation omitted).

Here, no affidavit in support of the federal search warrant was presented to the trial court or provided to the defense. There was no way for the trial court to determine that there was a substantial basis to conclude that probable cause existed for the search warrant. The trial court acknowledge this at the hearing when it denied the motion and stated, "I'm just skipping over that part as to whether or not it's valid because I can't make a determination on the validity of the warrant."

Accordingly, the trial court denied Cabrera's motion based on the good faith exception to the warrant requirement. The Fifth District Court of Appeals in State v. Redhead, 347 So. 3d 415 (Fla. 5th DCA 2022), described the good faith exception as follows:

> In sum, the good faith exception applies, precluding the suppression of evidence obtained by officers, if the officers acted in objectively reasonable reliance on the search warrant issued by a detached and neutral magistrate, regardless of whether the warrant was later found by the trial court to be unsupported by probable cause. Thus, the issue before the trial court was whether, given the totality of circumstances, a well-trained officer with the same information would have believe the warrant to be valid, with the caveat that if the search warrant at issue was based on an affidavit so lacking in indicia of probable cause so as to render official belief in its existence entirely unreasonable, then the good faith exception to the exclusionary rule does not apply.

Id. at 418 (internal citations omitted).

However, the exception is inapplicable when the warrant and affidavit are not in the record. "On appeal from a ruling denying the suppression of evidence seized pursuant to a search warrant, '[t]his court's review consists of "a legal examination of the evidence in the affidavit to determine whether it establishes probable cause . . . ."'" Coronado v. State, 148 So. 3d 502, 505 (Fla. 2d DCA 2014). In addition, "a warrant may be so facially deficient–i.e., in failing to particularize the place to be searched or the things to be seized– that the executing officers cannot reasonably presume it to be valid." U.S. v. Leon, 468 U.S. 897, 923 (1984). Accordingly, to make the decision to apply a good faith exception requires a court to review the warrant and supporting affidavit. Otherwise, there is no way for a court to determine whether a "search warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," Redhead, 347 So. 3d at 418, or whether it is facially deficient if the court cannot examine the four corners of the probable cause affidavit, which is the trial court's requirement when deciding whether to grant or deny a motion to suppress. See Rabb, 920 So. 2d at 1180.

Here, the trial court did not conduct this review because it could not do so, as it explicitly stated at the hearing. Thus, it erred in applying the good

13

faith exception. In both Leon and Redhead, the courts conducted an analysis of the contents of the application for the search warrant. This analysis supported the courts' decisions for finding that a good faith exception applied. As Cabrera points emphasizes in his Initial Brief, "The good faith exception is not 'the searching officer was told by the other officers that a warrant for a search based on unrelated reasons existed'". Here, at a minimum, Detective Rodriguez did not testify as to the reasons surrounding the search or what was contained in the federal search warrant or supporting affidavit. Accordingly, the good faith exception is inapplicable here. See Smitherman v. State, 342 So. 3d 685, 688 (Fla. 2d DCA 2022) ("When assessing whether there is probable cause to justify a search, 'the trial court must make a judgment, based on the totality of the circumstances, as to whether from the information contained in the warrant there is a reasonable probability that contraband will be found at a particular place and time.' 'This determination must be made by examination of the four corners of the affidavit.'"); see also Pagan v. State, 830 So. 2d 792, 806 (Fla. 2002).

Moreover, "[i]n filing a motion to suppress the defendant undertakes the burden of making an initial showing that the evidence at issue was obtained by the government as a result of a search and seizure." State v. Gay, 823 So. 2d 153, 154 (Fla. 5th DCA 2002). In the case before us, the

14

defense met this burden. Then, the burden shifts to the State "to establish that the evidence sought to be suppressed was obtained lawfully," by, for example, presenting the warrant and affidavit. Id. at 154-55. In Cabrera's case, the trial court erred when it found that the defense could not make a good faith argument that the alleged federal warrant was invalid because the defense had not seen the warrant. In fact, the party responsible for proving that the federal warrant was valid was the State.

In Cabrera's case, there are no other exceptions to the warrant requirement that would be applicable. Cabrera did not consent to the search. The cockfighting paraphernalia was not in plain view. Detective Rodriguez testified he did not see any of it until after he entered Cabrera's fenced property. There was no claim of emergency or other exigent circumstances. Accordingly, Cabrera's motion to suppress should have been granted. Minter-Smith v. State, 864 So. 2d 1141, 1144-45 (Fla. 1st DCA 2003). Because the search was illegal, any statements Cabrera made after the search should have been suppressed, as the statements were "fruit of the poisonous tree." Betancourt v. State, 224 So. 2d 378, 381 (Fla. 3d DCA 1969); see also Talley v. State, 581 So. 2d 635, 636 (Fla. 2d DCA 1991).

With respect to the "fellow officer rule," no fellow officer testified at the hearing to having the requisite knowledge that the warrant was valid. And as

15

previously discussed, the trial court did not and could not review the warrant and affidavit to see if any other officer besides Detective Rodriguez held any other knowledge that was objectively reasonable. As this Court stated in Albo v. State, 477 So. 2d 1071, 1073 (Fla. 3d DCA 1985), the fellow officer rule "makes very clear . . . that the rule works both ways: to validate an arrest when the responsible officers have probable cause and to vitiate it when, as here, none objectively exists." In addition, in quoting Whitely v. Warden, 401 U.S. 560 (1971), this Court stated in Albo:

> Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.

Albo, 477 So. 2d at 1073 (quoting Whitely, 401 U.S. at 568).

Under the facts in the record, no officer testified to having knowledge of the contents of the warrant and affidavit. In addition, the trial court did not have that knowledge, either. Thus, there was no way to know if anyone had an objective belief that the search warrant and supporting affidavit were valid.

## CONCLUSION

Detective Rodriguez entered Cabrera's property without a search warrant and without a reasonable reliance on an alleged federal search

16

warrant which he had not seen and which the State did not produce at the motion to suppress hearing. Under the particular circumstances presented in this case, there was no applicable exception to the warrant requirement, the search constituted an illegal search and seizure, and the trial court erred in denying Cabrera's motion to suppress. For these reasons, we reverse the trial court's ordering denying Cabrera's motion and remand for the trial court to grant the motion.

Reversed and remanded with instructions.